Matthew J. PECHINSKI and Brooke
Ritvo Pechinski, On Behalf of Them-
selves and All Others Similarly Situat-
ed, Plaintiffs,

v.

ASTORIA FEDERAL SAVINGS
AND LOAN ASSOCIATION
Defendant.

No. 02 Civ.4305 SHS.

United States District Court,
S.D. New York.

Jan. 6, 2003.

William C. Rand, Law Offices of William
Coudert Rand, New York City, for plain-
tiffs.

## OPINION AND ORDER

STEIN, District Judge.

Plaintiffs bring this action against Asto-
ria Federal Savings and Loan Association
claiming that a $2,479 charge assessed in
connection with the assignment of their
home mortgage violated the Truth in
Lending Act, 15 U.S.C. § 1601 *et seq.*
("TILA"). Plaintiffs also assert state law
claims of common law equity, breach of
contract, unjust enrichment, fraud, and de-
ceptive and unfair practices in violation of
New York General Business Law § 349.[1]

---

1. Plaintiffs brought this action not only on      their own behalf, but also on behalf of a class

Astoria Federal now moves pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss all claims except for plaintiffs' breach of contract and unjust enrichment claims. Because, as set forth below, the $2,479 charge was neither part of the finance charge of the mortgage as defined by TILA and its implementing Regulation Z nor is it a prepayment penalty, that charge did not have to be disclosed prior to entering into the loan agreement, and defendant's motion is accordingly granted.

## BACKGROUND

Plaintiffs Matthew J. Pechinski and Brooke Ritvo Pechinski own an apartment at 62 West 62nd Street in Manhattan. (Compl.¶ 16.) On March 27, 1997, plaintiffs obtained a $297,600 loan from The Greater New York Savings Bank ("Greater New York") in order to purchase the apartment. (Id.) The "Fixed/Adjustable Rate Note" (the "Note") signed in connection with the mortgage stated that the borrower "may make a full prepayment or partial prepayments without paying any prepayment charge." (Compl. ¶ 18 and Ex. A.) The Pechinskis also received a federal Truth–in–Lending Disclosure Statement that stated that there was no prepayment penalty. (Compl.¶ 18.) However, the mortgage stated that Greater New York could charge plaintiffs a "reasonable fee" as a condition of its agreeing to assign the mortgage to another lending institution. (Compl.20.) In the fall of 1997, subsequent to plaintiffs' obtaining the mortgage, Greater New York was acquired by Astoria Financial Corp., at which point the Astoria Federal Savings and Loan Association became the holder of plaintiffs' note and mortgage. (Compl.¶ 31.)

Four and one half years after obtaining their mortgage, plaintiffs notified Astoria Federal that they intended to refinance the mortgage, using U.S. Trust Corporation as the new, refinancing mortgagee, and that they therefore planned to prepay their Astoria Federal loan in full and simultaneously assign it to a new lender as a means of avoiding a New York state mortgage recording tax. (Compl.¶¶ 28, 32.) As part of the refinancing transaction, plaintiffs requested that Astoria Federal assign the mortgage to U.S. Trust. (Compl.¶ 32.) Astoria Federal responded to plaintiffs' request for an assignment by indicating that it would assign the mortgage only if the Pechinskis paid (1) an assignment fee of 1% of the outstanding balance of the mortgage, amounting to $2,834.11 and (2) a $200 appearance fee for an Astoria Federal representative to attend the closing, receive its check for the prepayment of the loan, and deliver the assignment to U.S. Trust. (Compl.¶ 33.)

Plaintiffs ultimately paid Astoria Federal the outstanding balance on the existing loan, the $200 appearance fee and, under protest, an assignment fee of .875% of the outstanding balance of the mortgage, amounting to $2,479. (Compl.¶ 34.)

Shortly thereafter, plaintiffs commenced this action alleging that the assignment fee violated TILA because (1) it was part of the finance charge on the loan and should have been disclosed to plaintiffs and included in the calculation of the finance charge and (2) it was a prepayment penalty that defendant was required to disclose to plaintiffs prior to their entering the loan agreement. Plaintiffs do not contest the $200 appearance fee.

of all those similarly situated. As of this date, however, the Pechinskis have not sought certification of this case as a class action.

## DISCUSSION

### 1. *Rule 12(b)(6) Standard*

In reviewing a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must accept as true the factual allegations in the complaint. *See Weinstein v. Albright,* 261 F.3d 127, 131 (2d Cir.2001); *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992) (*quoting Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). The review is limited, and "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985).

Although a court is limited to the facts stated in the complaint, for purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995) (per curiam) (*quoting Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). Even when a document is not attached as an exhibit, the court may consider such a document where the complaint "relies heavily upon its terms and effect," rendering the document "integral" to the complaint. *Id.*

### 2. *The TILA Claims*

The purpose of TILA and its accompanying regulations is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601. *See also Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (TILA's purpose is to assure "meaningful disclosure of credit terms to consumers.").

The Courts of Appeals have consistently ruled that TILA should be liberally construed in favor of the consumer in order to effectuate Congress' intent of promoting the informed use of credit. For example, the U.S. Court of Appeals for the Second Circuit wrote as follows:

> [TILA] is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co., Inc. v. Board of Governors of the Fed. Reserve Sys.,* 473 F.2d 1210, 1214 (2d Cir.1973). *See also Inge v. Rock Financial Corp.,* 281 F.3d 613, 621 (6th Cir.2002); *Fairley v. Turan–Foley Imports, Inc.* 65 F.3d 475, 479 (5th Cir.1995); *Jackson v. Grant,* 890 F.2d 118, 120 (9th Cir.1989).

The sole federal claim here is that Astoria Federal violated TILA and its implementing Regulation Z, 12 C.F.R. § 12 (1996), promulgated thereunder by the Federal Reserve Bank. Plaintiffs assert two violations of TILA: First, that the .875% assignment fee was part of the finance charge of the mortgage and therefore should have been disclosed by the

bank and included in the calculation of the finance charge presented to the Pechinskis before they entered into the loan agreement; and second, that even if the assignment fee is not part of the finance charge, it is a prepayment penalty that should have been disclosed by the bank pursuant to TILA.

### a) *The Assignment Fee is Not Part of the Finance Charge of the Mortgage*

■ Among the disclosures required by TILA are the three elements of a credit transaction: the amount financed, the finance charge, and the annual percentage rate. *See* 15 U.S.C. § 1638. TILA and Regulation Z define the finance charge as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); *see also* 12 C.F.R. § 226.4(a) (the finance charge includes charges imposed "as an incident to or a condition of the extension of credit."). Examples of charges included in the finance charge are: interest on the loan, service or carrying charges, loan fees, finder's fees, fees for an investigation or credit report, or other charges for any guarantee or insurance that protects the creditor against the obligor's default or other credit loss. *See* 15 U.S.C. § 1605(a).

■ To determine whether a charge is a part of the finance charge, a court must determine whether the charge is incident to, or a condition of, the extension of credit. *See Stutman v. Chemical Bank,* No. 94 Civ. 5013, 1996 WL 539845, at *3 (S.D.N.Y. Sept.24, 1996) (*citing Veale v. Citibank,* 85 F.3d 577, 579 (11th Cir.1996); *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1099 (5th Cir.1978) ("The important question is whether the seller refuses to extend credit until the customer agrees to another charge.")).

The .875% assignment fee in this action is not part of the finance charge as defined by TILA and Regulation Z. The .875% fee was not imposed incident to, or as a condition of, the extension of plaintiffs' loan. Instead, the fee was imposed more than four years after defendant issued the loan and there is no evidence that defendant would not have provided the loan without a guarantee that plaintiffs would pay this fee. *See Stutman,* 1996 WL 539845, at *3 ($275 document transfer fee assessed in connection with a mortgage prepayment is not part of the finance charge pursuant to TILA where fee was imposed three years after the defendant loaned the money and there is no allegation that the defendant would not have granted the loan without a guarantee that the fee would be paid).

Moreover, the assignment fee was imposed because of plaintiffs' specific request that Astoria Federal assign the mortgage to another lending institution. "Therefore, the [fee] was incident not to the extension of the loan, but rather to the extinguishment of the debt." *Id.* (*citing Adamson v. Alliance Mortg. Co.,* 861 F.2d 63, 65–66 (4th Cir.1988), *overruled on other grounds, Busby v. Crown Supply, Inc.,* 896 F.2d 833, 841 (4th Cir.1990) (fees for the release of a deed at the termination of a loan were not part of the finance charge because they were not incident to the extension of credit but instead were "incident to the formal extinguishment of the Lender's liens after the debts had been repaid.")).

Because the .875% assignment fee was not imposed incident to the extension of credit and because it was not a condition of the loan, it is not a finance charge within the meaning of TILA and Regulation Z.

### b) *The Assignment Fee is Not a Prepayment Penalty*

■ In addition to the finance charge, TILA requires the disclosure of other as-

pects of a credit transaction, including certain terms of prepayment. *See* 12 U.S.C.A. § 1638; 12 C.F.R. § 226.18 (1996). TILA requires that the lending institution provide the consumer with:

A statement indicating whether or not the consumer is entitled to a rebate of any finance charge upon refinancing or prepayment in full pursuant to acceleration or otherwise, if the obligation involves a precomputed finance charge [and][a] statement indicating whether or not a penalty will be imposed in those same circumstances if the obligation involves a finance charge computed from time to time by application of a rate to the unpaid principal balance.

15 U.S.C. § 1638(a)(11). Regulation Z elaborates on the disclosure required in the event of prepayment as follows:

(k) Prepayment. (1) When an obligation includes a finance charge computed from time to time by application of a rate to the unpaid principal balance, a statement [must be issued] indicating whether or not a penalty may be imposed if the obligation is prepaid in full.

(2) When an obligation includes a finance charge other than the finance charge described in paragraph (k)(1) of this section, a statement [must be issued] indicating whether or not the consumer is entitled to a rebate of any finance charge or if the obligation is prepaid in full.

12 C.F.R. § 226.18(k).

The Federal Reserve Bank has also issued Official Staff Interpretations of Regulation Z, 12 C.F. R. § 226, Supp. I (1996), which are to be given deference by the judicial branch. *See Milhollin,* 444 U.S. at 566, 100 S.Ct. 790. The Staff Interpretations define prepayment "penalty" to encompass "only those charges that are assessed strictly because of the prepayment in full of a simple-interest obligation, as an addition to all other amounts." Official Staff Interpretations, 12 C.F.R. § 226, Supp. I, ¶ 18(k). The Staff Interpretations offer examples of prepayment penalties including: "[i]nterest charges for any period after prepayment in full is made" or "[a] minimum finance charge in a simple-interest transaction." *Id.* TILA and its official interpretations thereby indicate that the type of penalty that must be disclosed relates to finance charges in addition to those otherwise due upon prepayment of the loan. The given examples all involve interest payments or other components of the finance charge. As determined above, however, the .875% fee is not part of the finance charge and therefore is not the type of fee that qualifies as a prepayment penalty. *See Stutman,* 1996 WL 539845, at*5.

Furthermore, the assignment fee at issue in this action does not fall within the statute's definition of a prepayment penalty because the fee was not imposed "strictly because of the prepayment in full" of the Astoria Federal loan. Had plaintiffs merely prepaid their loan—rather than requesting an assignment in conjunction with prepayment—no fee would have been assessed. *See Stutman,* 1996 WL 539845, at *5 ($275 document transfer fee was not a prepayment penalty because the fee "was not imposed strictly because of prepayment in full of the obligation, but rather because of specific services requested by plaintiffs in connection with the prepayment.").

Additionally, the assignment fee cannot be deemed a prepayment penalty since the fee can be assessed before or after the loan matures. Accordingly, a loan could mature without payment in full being made by the borrower and the borrower could subsequently obtain refinancing to repay the loan. In the event the borrower requests an assignment as part of the refi-

nancing, the assignment fee could still be assessed. But this fee could not be considered a *pre* payment penalty since the loan had already matured.

Plaintiffs forcefully contend that the fee is in fact a penalty because it does not relate to any service provided by the lender. Indeed, during oral argument on this motion, Astoria Federal conceded that the cost to the lender of assigning the mortgage is relatively minimal and that the assignment fee, calculated as a percentage of the outstanding principal balance of the loan, bears little if any relation to the services provided. However, those facts are not determinative of the penal nature of the assignment fee, since the fee must be scrutinized in light of the specific definition of a prepayment "penalty" as set forth in TILA and its implementing regulations. As discussed above, the assignment fee here does not constitute a prepayment penalty pursuant to that federal statute. The fact that the fee in question bears no apparent relation to the bank's cost of providing an assignment may speak to the reasonableness or unreasonableness of the assignment fee, but such an argument relates to plaintiffs' contract claims, which are not at issue on this motion.

### 3. *The State Law Claims*

A district court may decline to exercise jurisdiction over claims supported only by supplemental jurisdiction if it has dismissed all the claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c). The remaining claims for relief in plaintiffs' complaint are state law claims, over which this Court declines to exercise jurisdiction. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir.1998); *Marcus v. AT&T,* 138 F.3d 46, 57 (2d Cir.1998).

The remaining state law claims are therefore dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### CONCLUSION

Because plaintiffs have failed to state a claim for relief pursuant to TILA and its implementing regulations and because the Court declines to accept supplemental jurisdiction over the state law claims, defendant's motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted.