Tanya R. POWELL, Plaintiff,

v.

**AMERICAN GENERAL FINANCE, INC., Beneficial, a.k.a. Household Finance Realty Corp., Inc., BSB Bank & Trust Co., Inc., NBT Bank, Charter One Bank, FSB, Citifinancial, Inc., HSBC Bank, Inc., and M & T Bank Corp., Inc., Defendants.**

No. 3:02–CV–1605.

United States District Court,
N.D. New York.

March 22, 2004.

Tanya R. Powell, c/o Enable Organization, Binghamton, NY, Plaintiff Pro Se.

Hiscock & Barclay, LLP (Robert A. Barrer, Esq., of Counsel), Syracuse, NY, for Defendant American General Finance, Inc.

Philips, Lytle, Hitchcock, Blaine & Huber, LLP (Paul K. Stecker, Esq., of Counsel), Buffalo, NY, for Defendant Beneficial, a.k.a. Household Finance Realty Corp., Inc.

Hinman, Howard & Kattell, LLP (Paul T. Sheppard, Esq., of Counsel), Binghamton, MI, for Defendants BSB Bank & Trust Co., Inc. and NBT Bank.

Harris Beach, LLP (Glenn M. Fjermedal, Esq., of Counsel), Pittsford, NY, for Defendant Charter One Bank, FSB.

Crane, Greene & Parente (David M. Cherubin, Esq., of Counsel), Albany, NY, for Defendant Citifinancial, Inc.

HSBC Bank General, Counsel's Office (Paul K. Holbrook, Esq., Scott D. Miller, Esq., of Counsel), Buffalo, NY, for Defendant HSBC Bank.

Buchanan, Ingersoll PC (Christopher P. Schueller, Esq., of Counsel), Buffalo, NY, for Defendant M & T Bank Corp.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff filed a complaint in this Court on December 31, 2002, alleging that Defendants engaged in unfair and discriminatory lending practices in violation of federal banking laws and the United States Constitution. More specifically, she alleges violations of the Seventh, Ninth, Tenth, Fourteenth and Fifteenth Amendments to the United States Constitution. She also alleges violations of the Fair Housing Act ("FHA"), the Equal Credit Opportunity Act ("ECOA"), the Community Reinvestment Act ("CRA"), and the Truth–in–Lending Act ("TILA"). *See* 42 U.S.C. § 3603; 15 U.S.C. § 1691; 12 U.S.C. § 2901; 15 U.S.C. § 1601;[1] respectively.

## II. BACKGROUND

Plaintiff, an African–American resident of Binghamton, filed her *pro se* complaint on December 31, 2002, and her amended complaint on February 26, 2003. She alleges that Defendants discriminated against her based on her gender and race by declining to extend her business credit, personal credit, or a home mortgage loan. She also alleges that Defendants have systematically discriminated against African–Americans by denying them personal and business credit on the basis of race.

Presently before the Court are all Defendants' motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III. DISCUSSION

### A. Standard for Dismissal

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See* Fed.R.Civ.P. 12(b)(6); *see also Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). Hence, dismissal is appropriate only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (citations omitted). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) (citations omitted).

█ Where a litigant proceeds *pro se*, the court must construe the allegations in the complaint liberally and dismiss the

---

**1.** More specifically, Plaintiff alleges a violation of the Federal Reserve Board's regulations implementing the Truth–in–Lending Act, termed "Regulation Z."

complaint only where the litigant could prove no set of facts entitling her to relief. *See Lerman v. Bd. of Elections,* 232 F.3d 135, 140 (2d Cir.2000).

With these standards in mind, the Court will address Plaintiff's claims.

## B. Plaintiff's standing

■ Article III, Section 2 of the United States Constitution limits the jurisdiction of federal courts to "cases and controversies." *See, e.g., Flast v. Cohen,* 392 U.S. 83, 94–95, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Part of this limitation on federal court jurisdiction requires that a plaintiff have standing to bring her claim. *See id.* at 99–100, 88 S.Ct. 1942. A plaintiff only has standing if she can show that she is "a proper party to request an adjudication of a particular issue . . . ." *Id.* at 100, 88 S.Ct. 1942. A plaintiff can demonstrate that she has standing by showing that (1) she has sustained an injury; (2) the injury is fairly traceable to a defendant's conduct; and (3) the injury may be redressed through the relief that the plaintiff seeks. *See Fed. Election Comm'n v. Akins,* 524 U.S. 11, 19, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (citations omitted). To demonstrate an injury, a plaintiff must show that she sustained an actual, concrete injury that is neither " " 'conjectural or hypothetical.' " " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560,

112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quotation omitted).

Defendant BSB Bank & Trust Co. ("BSB") asserts that Plaintiff lacks standing to bring her claim because she did not apply to it for credit. According to Defendant BSB, it has no record of Plaintiff applying for credit in January, 2003. Defendant BSB contends instead that Plaintiff solicited it for funds to support Enable Organization, a not-for-profit organization for which she has no authority to act.

Plaintiff has alleged that Defendants injured her by unlawfully denying her credit and potentially causing her business to fail. Furthermore, this Court can grant monetary relief for causes of action arising under the United States Constitution or federal banking laws and so Plaintiff's injury is redressible. Although Defendant BSB alleges that Plaintiff did not, in fact, apply to it for credit, such an argument attacks the viability of Plaintiff's claim, which is not at issue in this motion.[2] Accordingly, the Court denies Defendant BSB's motion to dismiss to the extent that it is based upon Plaintiff's lack of standing.

## C. Plaintiff's claim under Regulation Z of TILA

TILA's Regulation Z protects consumers against predatory lending practices by

---

**2.** In Plaintiff's original complaint, she did not allege explicitly that any of the Defendants had denied her credit and/or mortgage loans. After she filed the first complaint, the Court ordered her to file an amended complaint for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, including a failure to allege any specific misconduct on the part of any specific defendant. *See* Dkt. No. 11 at 3. Before filing her amended complaint, Plaintiff apparently applied for credit from most of the Defendants, each of whom denied her applications. In the amended complaint, Plaintiff then asserted these denials of credit as a basis for her cause of action. Defendants have brought this to the Court's attention,

presumably as evidence that Plaintiff had no basis for her original complaint. However, since Plaintiff's original complaint provided notice of each of her causes of action and also alleged that Defendants' denials of credit formed the factual basis for her complaint, all Defendants had notice of the substance of Plaintiff's claim. Moreover, none of the Defendants moved to strike the additional factual allegations as prejudicial or immaterial. Therefore, although the Court views with disfavor Plaintiff's attempts to bolster her claim with new factual material, in light of Plaintiff's status as a *pro se* litigant, the Court has considered all of Plaintiff's allegations.

requiring lenders to disclose credit terms to borrowers. *See Pechinski v. Astoria Fed. S & L Ass'n,* 238 F.Supp.2d 640, 642 (S.D.N.Y.) (citations omitted), *aff'd,* 345 F.3d 78 (2d Cir.2003). Regulation Z's provisions also restrict or ban certain creditor practices in the areas of account cancellation, collections, interest rates, solicitations, and bill error resolution. *See* 12 C.F.R. § 226.5 *et seq.* A plaintiff may state a cause of action under TILA by alleging a violation of one of its provisions. *See Beaumont v. Citibank N.A.,* No. 01 Civ. 3393, 2002 WL 483431, *3 (S.D.N.Y. Mar. 28, 2002). All Defendants moved to dismiss Plaintiff's claims under TILA.[3]

Defendants point out that TILA protects consumers by requiring that banks and other creditors disclose credit terms to borrowers. *See* 15 U.S.C. § 1602(u). According to Defendants, they never extended any credit to Plaintiff at any time, and so she cannot state a claim under the statute.[4] Moreover, Defendant Citifinancial ("Citi") claims that, even if it had discriminated against Plaintiff based on her race, TILA does not create a cause of action for discrimination.

Plaintiff asserts only that Defendants denied credit to her and to other African–Americans on the basis of race.

■ Although the language of TILA does not explicitly restrict the coverage of the statute to an *existing* credit account, the provisions of the statute demonstrate that Congress framed the statute to govern existing credit accounts and credit ac-

count solicitation materials. *See, e.g.,* 12 C.F.R. § 226.6. Plaintiff has not alleged that she had any type of account with any of the Defendants at any time or that Defendants solicited her for a credit account. TILA has no provisions that govern credit denial or racially discriminatory lending, both of which form the crux of Plaintiff's claims. Accordingly, the Court grants all Defendants' motions to dismiss Plaintiff's claims under TILA.

## D. Plaintiff's claims under the CRA

The CRA requires a federal regulatory agency to assess whether a lending institution endeavors to meet the credit needs of an entire community, including low-income neighborhoods. *See* 12 U.S.C. § 2903(a)(1). The statute has no sharply delineated standards. However, it broadly requires federal supervisory agencies to examine a lending institution's efforts to lend to a broad spectrum of the community when processing an application for eligibility as a deposit facility. *See Lee v. Bd. of Governors of Fed. Reserve Sys.,* 118 F.3d 905, 913 (2d Cir.1997). All Defendants moved for dismissal of Plaintiff's claims under the CRA on the ground that the statute creates no private right of action.

■ As a basis for her claim, Plaintiff contends broadly that Defendants have not complied with the CRA because they have failed to create loan products which target African–American and working-class populations. However, the Second Circuit has held that the CRA does not create a pri-

---

**3.** Defendant Charter One Bank, FSB ("Charter One") originally filed a Motion for a More Definite Statement. It then moved for dismissal, incorporating by reference the arguments and legal assertions of those Defendants who had moved for dismissal. Defendants Beneficial, a.k.a. Household Finance Realty Corp., Inc. ("Beneficial") and HSBC Bank ("HSBC") also moved for dismissal by

incorporating by reference the arguments of the other Defendants.

Although Defendants M & T Bank Corp. ("M & T"), NBT Bank ("NBT"), BSB, and American General filed separate briefs, they relied primarily on the same arguments as the other Defendants.

**4.** Plaintiff has acknowledged that none of the Defendants extended her credit.

vate right of action. *See id.* (citation omitted). Therefore, the Court grants all Defendants' motions to dismiss Plaintiff's claims under the CRA.

### E. Plaintiff's claims under the Seventh, Ninth, and Tenth Amendments to the United States Constitution

■ The Seventh Amendment preserves the right to a jury trial in civil cases. *See* U.S. Const. Amend. VII. As Defendants correctly point out, a claim under the Seventh Amendment does not arise unless a plaintiff has not received a jury trial on a cause of action for certain types of legal relief. *See Charter Communications Entm't I, LLC v. McGuinness,* No. 3:00CV287, 2003 WL 22272595, *1, 2003 U.S. Dist. LEXIS 17240, *3 (D.Conn., Sept. 29, 2003). Plaintiff has not alleged any facts which would support a claim under the Seventh Amendment. Accordingly, the Court grants all Defendants' motions to dismiss Plaintiff's Seventh Amendment claims.

■ The Ninth Amendment does not create an independent cause of action. *See Rini v. Zwirn,* 886 F.Supp. 270, 289 (E.D.N.Y.1995) (citation omitted). The Supreme Court has repeatedly interpreted the Tenth Amendment, the reserved powers amendment, to speak only to issues of federalism and state's rights. *See, e.g., United States v. Morrison,* 529 U.S. 598, 649 n. 18, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000) (Souter, dissenting). Accordingly, the Court grants all Defendants' motions to dismiss Plaintiff's Ninth and Tenth Amendment claims.

### F. Plaintiff's claims under the Fourteenth and Fifteenth Amendments to the United States Constitution

Both the Fourteenth and Fifteenth Amendment restrain state action. *See, e.g.,* *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) (citations omitted); *Romeu v. Cohen,* 265 F.3d 118, 128 (2d Cir.2001). Plaintiff contends that, although Defendants may claim that they are acting privately, their acts are actually public and therefore subject to the Fourteenth Amendment. As support for her assertion that Defendants' acts are public, Plaintiff points out that Congress may enact laws that punish private discriminatory conduct.

■ Plaintiff is correct in her assertion that Congress may regulate the banking industry, including private banks, pursuant to the interstate commerce clause. *See* U.S. Const. Art. I, § 8. However, a plaintiff's complaint of discriminatory lending practices against private banking institutions, even where a state or federal authority has heavily regulated the industry, does not allege sufficient state action. *See Davidson v. Citicorp/Citibank, N.A.,* No. 90 CIV. 0941, 1990 WL 96991, *2 (S.D.N.Y. July 2, 1990) (citation omitted). Even read as broadly as possible, Plaintiff's allegations do not form the basis for a Fourteenth or Fifteenth Amendment claim; the banking statutes under which Plaintiff asserted her other claims are the most appropriate remedy for the discrimination of which she complains. Accordingly, the Court grants all Defendants' motions to dismiss Plaintiff's claims under the Fourteenth and Fifteenth Amendments.

### G. Plaintiff's claim under Regulation B of the ECOA

■ Regulation B, part of the ECOA, prohibits lenders from denying credit to individuals because of their race, color, religion, national origin, sex, marital status, or age. *See* 15 U.S.C. § 1691 *et*

*seq.; see also* 12 C.F.R. § 202.1.[5] The ECOA provides for a private cause of action based on disparate impact or disparate treatment. *See Jones v. Ford Motor Credit Co.,* No. 00 CIV. 8330, 2002 WL 88431, *3 (S.D.N.Y. Jan. 22, 2002), *rev'd on other grounds,* 358 F.3d 205 (2d Cir.2004). Courts analyze disparate treatment claims under the ECOA in the same manner as Title VII employment cases. *See Gross v. United States Small Bus. Admin.,* 669 F.Supp. 50, 52 (N.D.N.Y.1987) (citations omitted). Therefore, to establish her claim, a plaintiff must allege that she was a member of a protected class, that she was qualified for the loan that she requested, and that the lender declined the loan and showed a preference for a non-protected individual. *See id.* To establish a *prima facie* case under a disparate impact theory, a plaintiff must identify a specific policy or practice which the defendant has used to discriminate and must also demonstrate with statistical evidence that the practice or policy has an adverse effect on the protected group. *See Jones,* 2002 WL 88431, at *3 (citations omitted).

Plaintiff alleges both disparate impact and disparate treatment causes of action. She contends that banks have engaged in unfair business practices that have prevented African–Americans from purchasing homes and maintaining businesses for many years. As support for her disparate impact claim, Plaintiff alleges that Defendants engage in certain practices that have a disproportionate impact on African–American credit and loan applicants. For example, Defendants routinely reject ap-plications for small loans. Defendants also rely upon information that credit bureaus, appraisers, and brokers supply regarding a credit application. Defendants also rely on income levels and credit histories as indicators of creditworthiness; such factors disproportionately affect African–Americans. Plaintiff has also enumerated several more general allegations. For instance, she alleges that banks and the U.S. banking system have made credit unavailable to African–Americans.

As support for her disparate treatment claim, Plaintiff contends that the loan officers to whom she gave her loan applications were all white and did not adequately consider her application. Furthermore, she contends that Defendants subjected her application to onerous requirements even though her debt ratio "was not a problem." *See* Amended Complaint at ¶ 20.

Defendants contend that Plaintiff has not alleged any actual events, policies, or actions which she claims constitute discrimination, nor has she alleged any circumstances that give rise to an inference of racial discrimination.[6] As a result, her case fails on the first prong of the disparate impact analysis because it articulates no policy or practice. With respect to any disparate treatment claims, Plaintiff has provided only a bare and unsupported assertion that she was qualified for the loan; she has not alleged that she was more qualified than white applicants.

■ Although a motion for dismissal under 12(b)(6) tests only the adequacy of a

---

**5.** Although Plaintiff's amended complaint alleges generally that Defendants discriminated against her based on her sex and gender, every allegation in her complaint relates to race discrimination, and she did not provide even one allegation supporting a claim of sex discrimination.

**6.** Defendant American General also asserts that Plaintiff's claim fails because it can provide a legitimate business reason for denying Plaintiff credit. However, for the purposes of this motion, the Court is obligated to treat Plaintiff's allegations as true. As a result, such an assertion does not provide a basis for dismissal.

plaintiff's complaint, Defendants are correct in their assertion that Plaintiff alleges no specific policy to support her disparate impact claim. *See Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 91 (2d Cir.2000) (citation omitted). She broadly alleges that Defendants' reliance on indicators of creditworthiness, such as credit histories and income levels of applicants, causes banks to deny credit disproportionally to African–American loan candidates. However, ECOA regulations explicitly permit lenders to use race-blind factors such as credit histories and income levels when determining whether to extend credit. *See* 12 C.F.R. 202.6(b)(5)(6). Moreover, the regulations explicitly permit lenders to utilize third-party credit rating organizations. *See* 12 C.F.R. § 202.10(b). Likewise, Plaintiff's complaint fails to allege a " 'causal connection between a facially neutral policy . . . and the resultant proportion of minority' group members in the population at issue." *See Hack*, 237 F.3d at 90–91 (quotation omitted).[7] In *Jones*, another ECOA case, the plaintiffs' case survived a motion for dismissal because they alleged that a specific policy—a creditor's subjective computation of loan rates—resulted in disproportionately high interest rates for African–American borrowers. *See Jones*, 2002 WL 88431, at *1. In contrast, Plaintiff has not alleged that Defendants used any subjective indicators when making loan decisions.

■ Plaintiff's three allegations in support of her disparate treatment claim are that loan officers with whom she met were all white, that Defendants subjected her application to more stringent scrutiny, and that her debt ratio was acceptable and she therefore should have received the requested loans. However, the race of the loan officers is not a fact supporting an inference of discriminatory intent on the part of Defendants. Furthermore, Plaintiff acknowledges that Defendants provided her with legitimate reasons for rejecting her application, such as lack of credit history, lack of collateral, and the absence of a co-signer. She does not allege any facts which would tend to show that she actually had a sufficient credit history, sufficient collateral, and/or a necessary co-signer. Whether her debt ratio was acceptable does not bear on any of Defendants' stated reasons for declining to extend credit to Plaintiff, and she provides no specific allegations as to exactly how Defendants subjected her application to additional scrutiny vis-a-vis non-minority loan applicants.

Accordingly, the Court grants all Defendants' motions to dismiss Plaintiff's claims under the ECOA.

## H. Plaintiff's claim under the FHA

The FHA prohibits discrimination against protected classes in any transactions involving the sale or rental of housing. *See* 42 U.S.C. § 3604; *see also Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003). Plaintiff states generally that American banks have for many years deliberately prevented African–Americans from obtaining home loans at market rates.

---

**7.** As an exhibit to Plaintiff's Memorandum of Law, she provided copies of articles that point out that African–Americans and other minorities have significantly less access to credit and loans than non-minorities. However, the 12(b)(6) motion is directed to the sufficiency of the complaint and not the contents of the brief. *See Hack*, 237 F.3d at 91 (citation omitted). Moreover, even if the Court did consider Plaintiff's memorandum because of Plaintiff's status as a *pro se* litigant, the memorandum provides no additional factual support for Plaintiff's allegation that she herself has been subject to discriminatory practices, and she specifically states that she does not intend to bring her action as a class action.

In response, Defendants Citi, HSBC, M & T and NBT contend that Plaintiff has not alleged that they denied her housing or granted her housing on discriminatory terms or conditions. According to Defendants, although the FHA allows for several types of actions, including one based on failure to provide housing loans in a non-discriminatory manner, Plaintiff did not allege any facts showing that she engaged in any real estate transaction or applied to Defendants for a home loan.

Defendants American General, Beneficial, Charter One, and BSB have largely relied upon the same arguments that they raised with respect to Plaintiff's claims under the ECOA; that is, that even if they did reject Plaintiff's application for a home loan, she has provided no specific allegations supporting a disparate treatment or disparate impact claim.

Plaintiff did not allege that she applied for a housing-related loan or engaged in a housing-related transaction with Defendant Citi. Likewise, she alleges that she applied for business loans, not housing loans, from Defendants HSBC, M & T, and NBT. Therefore, Plaintiff has not alleged sufficient facts to support a *prima facie* case with respect to these Defendants.

■ With regard to the other Defendants, including Beneficial, American–General, BSB Bank, and Charter One, Plaintiff alleged that she applied either for a mortgage loan or for an unspecified loan. Construing Plaintiff's *pro se* claims to suggest their strongest possible allegations, she has alleged that these Defendants declined to approve her application for a housing loan. However, as Defendants point out, Plaintiff's claims under the FHA suffer from the same deficiencies as her claims under the ECOA. That is, Plaintiff simply has not alleged sufficient facts to support a claim of discrimination. She did not allege how Defendants treated her differently from white applicants, nor has she offered any specific examples of discriminatory policies. Her generalized statement that banks discriminated against African–Americans from the 1900s onward is not sufficient to support a claim under the FHA.

Accordingly, the Court grants all Defendants' motions for dismissal of Plaintiff's FHA claims.

## IV. CONCLUSION

After carefully considering the file in this matter and the parties' submissions, as well as the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that all Defendants' motions to dismiss are **GRANTED** in their entirety; and the Court further

**ORDERS** that Defendant Charter One Bank, FSB's motion for a more definite statement is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**