Anthony G. GILL, Plaintiff–Appellant,

v.

Chris PIDLYPCHAK, Correction
Officer;  T.G. Dygert, Correction
Officer, Defendants–Appellees.

No. 03–0232.

United States Court of Appeals,
Second Circuit.

Submitted:  June 1, 2004.

Decided:  Nov. 19, 2004.

Anthony G. Gill, pro se, Romulus, NY, for plaintiff-appellant.

Andrea Oser, for Eliot Spitzer, Attorney General of the State of New York (Martin A. Hotvet, of counsel), for Defendants–Appellees.

Before: CALABRESI and WESLEY, Circuit Judges, and SCULLIN, Jr., District Judge.*

Judge SCULLIN concurs in the majority opinion and in a separate opinion.

CALABRESI, Circuit Judge.

In November 2002, Plaintiff–Appellant Anthony Gill, a prisoner at the Five Points Correctional Facility, filed a *pro se* action in the United States District Court for the Northern District of New York against corrections officers Chris Pidlypchak and T.G. Dygert, in their individual capacities. Gill's complaint alleged that these two officers had violated his First, Eighth, and Fourteenth Amendment rights by (1) deliberately exposing him to second-hand tobacco smoke; (2) depriving him of one meal on each of three different days; and (3) retaliating against him—for filing grievances and complaints concerning their behavior—by, *inter alia,* submitting false misbehavior reports that resulted in his placement in prison "keeplock." The district court (Hurd, *J.,* sitting by designation) dismissed the lawsuit pursuant to Fed.R.Civ.P. 12(b)(6). The court concluded that Gill's second-hand smoke and deprivation of meals claims alleged only a *de minimis* injury, and, hence, did not amount to an Eighth Amendment violation. *See Gibeau v. Nellis,* 18 F.3d 107, 110 (2d Cir.1994). The court further found that Gill's First Amendment retaliation claim failed because the alleged adverse action did not have an actual deterrent effect on his exercise of First Amendment rights: Gill had commenced at least four additional lawsuits and at least thirty-five institutional grievances against the Department of Correctional Services and its employees since the asserted retaliation.

On appeal, Gill seeks reinstatement of both his second-hand smoke and his retaliation claims.[1] We review *de novo* a district court's Rule 12(b)(6) dismissal for failure to state a claim. *See Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir.2003). With regard to his Eighth Amendment cause of action, we affirm substantially for the reasons given by the district court. We, however, vacate the district court's judgment as to Gill's retaliation claim, and remand that claim for further proceedings.

■ We have previously held that, to sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In the case before us, the first and third prongs are not much in dispute. The basic question we face here is whether the defendants' action was meaningfully "adverse" although it did not

---

* The Honorable Frederick J. Scullin, Jr., Chief Judge of the United States District Court for the Northern District of New York, sitting by designation.

1. Gill does not on appeal challenge the district court's ruling on his Eighth Amendment meal deprivation claim: We therefore treat this claim as abandoned. *See Beatty v. United States,* 293 F.3d 627, 632 (2d Cir.2002).

ultimately dissuade the plaintiff from exercising his rights under the First Amendment.

Defendants argue that under our precedents, a plaintiff must allege an actual chill of his or her First Amendment rights. And indeed, one line of cases in our Circuit—involving criticism of public officials by private citizens—does impose an actual chill requirement for First Amendment retaliation claims. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir.1992) (affirming a Rule 12(b)(6) dismissal on the grounds that plaintiff had not alleged an actual chilling effect and, in fact, had admitted that he had not changed his behavior at all as a result of the town's allegedly adverse actions). Some of these public official cases cast this requirement in terms of standing, *see, e.g., Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir.2002) (holding that plaintiff lacked standing because she could not demonstrate "an actual, non-speculative chilling effect"), while others put the requirement in terms of stating a colorable claim, *see, e.g., Curley v. Village of Suffern*, 268 F.3d 65, 72–73 (2d Cir.2001). In *Curley*, for example, we said (at least in that limited public official context) that a plaintiff must prove that (1) she has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of her First Amendment right. *Id.* at 73 (citing *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998)).

Defendants concede, however, that in the prison context we have previously defined "adverse action" *objectively*, as retaliatory conduct "that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir.2003), *superseded by* 320 F.3d 346, 2003 WL 360053 (2d Cir. Feb. 10, 2003) 2003 U.S.App. LEXIS 13030. In *Davis*, we made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits. Thus, after noting that the *Davis* plaintiff had engaged in grievance "efforts beyond what is reasonably expected of an inmate with 'ordinary firmness,' " we concluded that the prisoner "should not be denied remedy because his extraordinary efforts resulted in the resolution of grievances that would have deterred a similarly situated individual of ordinary firmness . . . ." *Id.* (internal citations and quotation marks omitted). Davis' retaliation claim was therefore reinstated to permit him to try to adduce facts that would support his assertion "that the alleged retaliation would have deterred a reasonable inmate . . . ." *Id* at 354. Relying on *Davis*, this Court has subsequently dealt summarily with precisely this same issue, in another case brought by the same plaintiff.

Defendants contend that *both* the objective and subjective tests must be met; the former to ensure that the claim is not frivolous, *see, e.g., Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir.2001) (failure to meet objective test reveals that "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection") and the latter to ensure that there is an injury sufficient to grant standing. But, in fact, in the public official retaliation context, we have used the subjective test to gauge both the nature and the extent of the alleged injury, while in prison cases we have deployed the objective test without regard for whether the plaintiff himself was actually chilled. There are several ways to resolve this apparent inconsistency.

First, we might conclude that different sorts of retaliation cases are susceptible to

different requirements. For example, it is well-settled that public employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them. They need only show (1) that the speech at issue was made by the employee as a citizen expounding on matters of public concern rather than as a worker speaking on matters of personal interest; (2) that they suffered an adverse employment action (such as firing or demotion); and (3) that the speech was at least a substantial or motivating factor of the adverse employment action. *See Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir.2003). Thus, provided that the government cannot justify its action under the *Pickering* test,[2] the employee's essential burden is to show that he or she was punished, not that his or her speech was "effectively chilled" from that point forward. This same approach holds true for certain public contractors as well. *See Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 670, 673, 116 S.Ct. 2342 (1996). We might therefore conclude that prisoner cases, like public employee and contractor cases, arise from different circumstances than the public official/private citizen cases cited by defendants, and therefore have different requirements.[3] *See, e.g., Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc) (holding, in a prisoner retaliation case, that the injury is "the adverse consequences which flow from the inmate's constitutionally protected action"); *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir.1994) (noting, in a prisoner case, that the injury "inheres in the retaliatory conduct itself").

Second, we might determine that there is no inconsistency at all. In the *Spear* line of cases, which impose a subjective test, the only *injury* alleged by the plaintiff is, seemingly, the *putative chilling itself*. The requirements of the *Curley* test, after all, are only: (1) a First Amendment interest; (2) a government official who is motivated to punish exercise of that interest; and (3) actual chilling. Plaintiffs in these types of cases need not show "adverse action" (say, keeplock or firing) *plus* chilling. In other words, it is the plaintiff's allegation of chilling which makes the action ostensibly "adverse" in the first place. So, for example, in *Spear*, the plaintiff did not allege, and probably could not have alleged, any other harm. The town filed a complaint and sought an injunction against Spear, but the only potential injury Spear could have suffered was the impairment of his First Amendment rights. *See also Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir.2002) (plaintiff alleged that a threatened suit against her by a school board official chilled her speech); *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir.1998) (plaintiff alleged that harassment by town officials chilled his protected expression); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (plaintiff alleged that his speech was chilled by a malicious prosecution suit brought against him, even though all claims in the suit were dismissed).[4]

**2.** The *Pickering* test consists of three elements: whether "(1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." *Johnson*, 342 F.3d at 114 (citing *Jeffries v. Harleston*, 52 F.3d 9, 13 (2d Cir.1995)).

**3.** Plaintiff's *standing* to bring suit, under this approach, is not in doubt. In the instant case the harm would be time spent in keeplock; in the employment cases it is termination or some other adverse employment action.

**4.** These cases all derive from *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), a case in which, once again, the only harm alleged was the chilling of plaintiffs'

On this view, defendants are correct that a plaintiff asserting First Amendment retaliation must allege some sort of harm, but they are wrong that this harm must, in all cases, be a chilling of speech. In the employment context, under this framework, the harm is some concrete diminution in job responsibilities, security, or pay—up to and including termination. In the prison context, the harm could include such an adverse action as placing a plaintiff in keeplock for a period of weeks. Indeed, even in certain cases involving public official/private citizen retaliation claims, we have seemingly not imposed a subjective chill requirement where some other harm is asserted. For example, in *Gagliardi v. Village of Pawling*, 18 F.3d 188 (2d Cir.1994), we confronted the plaintiffs' claim that the municipal defendants' alleged misapplication of the zoning code was conducted in retaliation for the plaintiffs' exercise of their free speech rights. To establish a retaliation claim under 42 U.S.C. § 1983 under those circumstances, we held that the plaintiffs must initially show (1) "that [their] conduct was protected by the first amendment,'" and (2) that "defendants' conduct was motivated by or substantially caused by [plaintiffs'] exercise of free speech." *Id.* at 194 (quoting *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir.1988)), and nothing beyond the two requirements. Still, the *Gagliardi* plaintiffs' retaliation claim apparently survived a motion to dismiss because (1) they made an adequate showing on both of these accounts, but also because (2) they adequately pleaded non-speech injuries—among other things, noise pollution. *Id.* at 190. *See also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83 (2d Cir.2002) (applying same test in similar context).

Under this approach, standing is no issue whenever the plaintiff has clearly alleged a concrete harm independent of First Amendment chilling. It is only a problem where no harm independent of the First Amendment is alleged. For there, the only injury is the chilling itself.

Third, we might decide that standing remains a problem; that time spent in keeplock simply does not amount to a sufficient injury and that subjective chilling is generally required. We would then limit the instances in which we have applied the objective test alone (and thereby eschewed a subjective analysis) to a particular class of retaliation cases. On this view, while subjective chilling is a general requirement, where a plaintiff alleges that the protected conduct at issue is the prior filing of a *grievance* or *lawsuit* against the defendant, it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation. If bringing the action demonstrates that the plaintiff has not been chilled—and has failed to meet the subjective test—then such a plaintiff could never seek redress for retaliation. One reading of *Davis*, then, would be that it applies not to any prison case, but only to those cases in which the plaintiff brings suit based on an allegation that the defendant retaliated for the plaintiff's prior suit or grievance. *Cf. Walker v. Pataro*, 2002 WL 664040, at *9 (S.D.N.Y. Apr.23, 2002), 2002 U.S. Dist. LEXIS 7067 ("the test ... is not whether plaintiff ... himself was chilled (if that were the standard, no plaintiff likely would prevail, for the very commencement of a lawsuit could be used by

---

speech. There, the Court explained that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm ...." *Id.* at 13–14, 92 S.Ct. 2318. But the Court in *Laird* did not in any way rule out the possibility that the requisite harm might be of a non-speech sort.

defendants to argue that the plaintiff was not chilled) . . . . "). By contrast, where a prisoner alleges that he suffered retaliation for speaking or writing on a matter of public concern, but continued to speak or write after the alleged adverse action had occurred, the problem of the self-defeating lawsuit would not be present and the subjective chill requirement might govern.[5]

■ We need not, however, choose among these various possibilities to decide the case before us today. Our holding does not depend on an analysis particular to any of them, for our undertaking here is "merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). And under each approach, this plaintiff has articulated a First Amendment retaliation claim sufficient to survive defendants' motion to dismiss. Even under the most narrow approach—limiting *Davis* to cases where a prisoner-plaintiff alleges retaliation for his prior filing of a grievance or lawsuit—Gill would prevail in this appeal. His claim, like that of the plaintiff in *Davis*, involves the prior filing of grievances and lawsuits against the instant defendants. Therefore, as in *Davis*, we conclude that the fact that a particular plaintiff such as Gill—who, we recognize, is no stranger either to the grievance system or to the federal courts—responded to retaliation with greater than "ordinary firmness" does not deprive him of a cause of action.

Gill has sufficiently alleged (1) participation in protected activity: the use of the prison grievance system; (2) adverse action on the part of the defendants—the filing of false misbehavior reports against

Gill and his sentence of three weeks in keeplock—that would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts; and (3) a causal connection between the protected activity and the adverse action.

Accordingly, we AFFIRM the district court's dismissal of plaintiff's Eighth Amendment claim. We VACATE the judgment of the district court dismissing plaintiff's First Amendment suit. And we REMAND that cause of action for proceedings consistent with this opinion. Costs will abide the ultimate result.

SCULLIN, Chief District Judge, concurring in judgment.

Although I agree with the majority's decision to vacate the district court's judgment dismissing plaintiff's First Amendment retaliation claim and to remand for further proceedings, I write separately because I believe that, on the facts of this case, in order to sustain his retaliation claim, plaintiff must establish that defendants' actions both objectively and subjectively chilled him from vindicating his First Amendment rights.

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Powell v. Am. Gen. Fin., Inc.*, 310 F.Supp.2d 481, 483 (N.D.N.Y.2004) (citations omitted). Thus, dismissal is improper unless " ' "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' " *Id.*

---

**5.** Were we to conclude that this is the appropriate method of resolving the possible inconsistency among our various sets of retaliation cases, we would still be faced with the issue of the standing requirement. We might conclude, however, that plaintiff, who brought suit, was still subject to sufficient pressure not to, and that this pressure amounted to a cognizable injury for standing purposes.

(quotation omitted). Moreover, where the case involves a *pro se* litigant, "the court must construe the allegations in the complaint liberally and dismiss the complaint only where the litigant could prove no set of facts entitling [him] to relief." *Id.* at 483–84 (citation omitted).

Although even applying this liberal standard I, unlike the majority, have some doubt that plaintiff has sufficiently alleged that defendants' actions—the filing of false misbehavior reports against him and his sentence of three weeks in keeplock—would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process and the courts, I am willing to assume that plaintiff has met his burden for purposes of this discussion. Nonetheless, I do not think that such a showing—in light of the facts of this case—is sufficient to sustain a First Amendment retaliation claim.

To the contrary, I am convinced that, in the prison setting, the court should distinguish between the retaliation claims of inmate-plaintiffs who do no more than pursue lawsuits or grievances about the incidents that they claim resulted in defendants' retaliatory conduct and the retaliation claims of inmate-plaintiffs, such as the plaintiff in this case, who, after the alleged retaliatory conduct occurs, continue to file grievances and lawsuits not only with regard to the conduct about which they complain but also with regard to incidents unrelated to those that form the basis for their retaliation claims.[1] In the latter case, the plaintiff should be required to demonstrate that he was subjectively chilled—as well as objectively chilled—as a result of the defendants'

conduct, from vindicating his First Amendment rights.

The facts of this case demonstrate why a showing of subjective chill is appropriate in such cases. First, not to require such a showing, is inconsistent with the well-established principle that courts should approach prisoner claims of retaliation with skepticism. *See Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (quotation omitted). Moreover, in a case in which the plaintiff's actions, viewed objectively, are totally inconsistent with a finding that the defendants' actions had any effect whatsoever on his subsequent conduct, he should be required to show to the factfinder's satisfaction that defendants' actions did, in fact, chill him from vindicating his First Amendment right to seek redress through the grievance process and the courts. Otherwise, it appears to me, that "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker,* 239 F.3d 489, 493 (2d Cir.2001) (citation omitted). This objective inquiry is " 'not static across contexts,' but rather must be 'tailored to the different circumstances in which retaliation claims arise.' " *Id.* (quotation omitted).[2]

As the majority explicitly recognizes, Gill "is no stranger either to the grievance system or to the federal courts." To allow such a plaintiff to proceed with a First Amendment retaliation claim where the facts clearly do not support a finding that he was subjectively chilled, in effect, permits the plaintiff to maintain such a claim even though he was not actually deterred from exercising his constitutional rights.

1. As the district court noted, plaintiff commenced at least four additional lawsuits and at least thirty-five institutional grievances against the Department of Correctional Services and its employees since the asserted retaliation occurred.

2. I acknowledge that the *Dawes* court made these comments when discussing the "objective inquiry," but I believe that they are equally applicable to a "subjective inquiry."

Not only is such a finding inconsistent with the principle that courts should review prisoner claims of retaliation with some degree of skepticism, it ignores the fact that, absent a showing that he has suffered a specific injury as a result of the defendants' conduct, a plaintiff lacks standing to pursue his claim. *See, e.g., Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir.2002); *Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001); *Spear v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir.1992).

Accordingly, although I concur with the majority's decision, I respectfully dissent from its reasoning.