David McANANEY, Carolyn McAnaney, individually and on behalf of all others similarly situated, Cynthia Russo, Phillip Russo, Constance Reilly, and John Reilly, Plaintiffs,

v.

ASTORIA FINANCIAL CORPORATION, Astoria Federal Savings and Loan Association, Astoria Federal Mortgage Company, Long Island Bancorp, Inc., and Long Island Savings Bank, FSB, Defendants.

No. 04–CV–1101(ADS)(WDW).

United States District Court, E.D. New York.

Feb. 17, 2005.

G. Oliver Koppell, Esq., Whalen & Tusa, P.C., New York, NY (Joseph S. Tusa, Paul C. Whalen, Of Counsel), for the plaintiffs.

Emmet, Marvin & Martin, LLP, By Alfred W.J. Marks, Esq., New York, NY, for the defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs filed this class action complaint alleging that the defendants violated the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Fair Debt Collection Practices Act by collecting three types of fees in connection with the prepayment and satisfaction of mortgages and home equity loans. The plaintiffs also assert various causes of action under New York State common law for breach of contract, unjust enrichment, and fraud, and under section 349 of the New York General Business Law and section 1921 of the New York Real Property Actions and Proceedings Law.

Presently before the Court is a motion by Astoria Financial Corporation, Astoria Federal Savings and Loan Association, Astoria Federal Mortgage Company, Long Island Bancorp, Inc., and Long Island Savings Bank, FSB, (collectively, the "Defendants") to dismiss the Federal claims for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and for the Court to decline to retain supplemental jurisdiction over the state law claims.

## BACKGROUND

The following facts and allegations set forth below are taken from the Plaintiffs' amended complaint and will be viewed in the light most favorable to the plaintiffs, which the Court accepts only for purposes of this motion.

The plaintiffs David McAnaney, Carolyn McAnaney, Cynthia Russo, Phillip Russo, Constance Reilly, and John Reilly (collectively, the "Plaintiffs") were all mortgagors of Long Island Savings Bank, FSB ("Long Island Savings"). Long Island Savings was a thrift institution and a wholly-owned savings bank subsidiary of Long Island Bancorp, Inc., which closed on September 30, 1998, and merged into the defendant Astoria Federal Savings and Loan Association ("Astoria Federal"). Astoria Federal provides retail banking, mortgage, small business, and consumer loan services to Nassau, Suffolk, Queens, Kings, and Westchester Counties in New York and is a wholly-owned and controlled subsidiary of Astoria Financial Corporation ("Astoria Financial").

According to Astoria Financial's Form 10–K, filed with the Securities and Exchange Commission for the year ending on December 31, 2002, Astoria Financial states that they "generally sell [their] fifteen year and thirty year fixed rate loan production into the secondary mortgage market...." The secondary mortgage market in the United States consists of buyers of mortgages such as the Federal Home Loan Mortgage Corporation ("FHLMC"), the Government National Mortgage Association ("GNMA"), and the Federal National Mortgage Association ("FNMA").

When applying for their mortgages from the Defendants, all of the Plaintiffs received a standard form mortgage contract. In the contract, the Defendants state the mortgagor "will not be required to pay lender for the discharge." The contract states further that the mortgagor "will pay the cost of recording the discharge in the proper official records." Attached to the contract also was a standard Rider form, which states that the mortgagor will have to pay all reasonable fees relating to the mortgage including, but not limited to, satisfaction of the mortgage. At the bottom of the Rider is a bold-faced heading that reads: "RIDER VOID IF SECURITY INSTRUMENT SOLD TO FNMA, GNMA, OR FHLMC."

The complaint alleges that the Defendants routinely charge consumers fees and charges not permitted by the mortgage contracts for loans resold to FNMA, GNMA and FHLMC. The complaint further alleges that such fees constitute finance charges, prepayment penalties, refinancing penalties, and payoff fees that are charged to consumers that pay-off mortgages prior to maturity.

The Plaintiffs were all at one time mortgagors of the Defendants. Some time after the loan origination, the Defendants sold the Plaintiffs' mortgages to the secondary mortgage market. Subsequent to the sale, Long Island Savings and Astoria Federal acted as the servicer of the mortgage, collecting debts for the mortgage owned by FNMA, FHLMC, or GNMA. When the Plaintiffs wished to prepay the loan, they received a letter from Astoria

Federal listing the amount necessary to satisfy the mortgage that also contained certain other charges. Included among those charges were an "Atty Doc Prep Fee" of $125, a "Facsimile Fee" of $25 and a "Recording Fee" of $64 (collectively, the "Disputed Fees"). In the case of the Reilly Plaintiffs, the facsimile fee was $50. In the case of the Russo Plaintiffs, who also were obligors of another loan originated by the Defendants that was secured by the Russo residence, they were charged an additional "Satisfaction Fee" of $125.00 and a "County Clerk Fee" of $64.50 to pay off the loan. All of the Plaintiffs paid the Disputed Fees in order to satisfy their mortgage loans.

The Plaintiffs contend that the Disputed Fees each constitute undisclosed finance charges, prepayment penalties, refinancing penalties and payoff fees that would not have been imposed on, or payable by the Plaintiffs had the mortgages or loans been paid off at maturity rather than at an earlier date. In addition, the Plaintiffs contend that, although New York law requires that a mortgage satisfaction be recorded within 45 days from the last payment of principle and interest owed on the mortgage, the McAnaney's mortgage was not filed for more than a year. The Plaintiffs also contend that no Satisfaction of Mortgage has been filed for the Russo mortgage.

## DISCUSSION

### I. Motion to Dismiss Standard

In ruling on a motion to dismiss, pursuant to Rule 12(b)(6), the court must accept as true all the factual allegations and construe the complaint liberally. *Scutti Enterprises v. Park Place Entertainment Corp.*, 322 F.3d 211, 214 (2d Cir.2003); *Bolt Elec. v. City of New York*, 53 F.3d 465, 469 (2d Cir.1995). The court also must draw all reasonable inferences in the plaintiff's favor, but need not accept "mere conclusions of law or unwarranted deductions." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir.2000).

In support of their motion to dismiss, the Defendants have submitted a number of materials outside the pleadings, including an affidavit and numerous exhibits. Federal Rule of Civil Procedure 12(b)(6) provides that

[i]f, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b)(6). However, the court has discretion to "exclude the additional material and decide the motion on the complaint alone...." *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir.1991) (internal quotations omitted); *Moses v. Citicorp Mortg., Inc.*, 982 F.Supp. 897, 901–02 (E.D.N.Y.1997). The Court declines to consider the materials the parties have submitted outside the pleadings. Further, without the parties having a full opportunity for discovery in this case, the Court declines to convert the Defendants' motion to one for summary judgment.

In addition, in its review, the Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[a]ll pleadings shall be so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995).

## II. The Truth in Lending Act

### A. Statutory Framework

■ The Truth-in-Lending Act ("TILA") was enacted to assure meaningful disclosure of credit terms, avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. §§ 1601–65(b) (2004); *see also Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980) (stating that TILA's purpose is to assure "meaningful disclosure of credit terms to consumers"); *Stein v. JP Morgan Chase Bank*, 279 F.Supp.2d 286, 291 (S.D.N.Y.2003). Failure to make a required disclosure and satisfy the Act may subject a lender to statutory and actual damages that are traceable to the lender's failure. *Beach v. Ocwen Federal Bank*, 523 U.S. 410, 412, 118 S.Ct. 1408, 1410, 140 L.Ed.2d 566 (1998).

■ In enacting TILA, Congress delegated authority to the Federal Reserve Board of Governors to promulgate implementing regulations and interpretations known as Regulation Z. 15 U.S.C. § 1604(a). These regulations, which are located at 12 C.F.R. Part 226 may be relied upon by creditors for protection from any civil or criminal liability. *See Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, 124 S.Ct. 1741, 1746, 158 L.Ed.2d 450 (2004). According to Regulation Z, the provisions of TILA apply to creditors that regularly offer or extend credit for personal, family, or household purposes, and that is payable by agreement in more than four installments, or subject to a finance charge. 12 C.F.R. § 226.1 (2004). As such, TILA is applicable to loans that are secured by real property or a dwelling such as residential mortgage transactions and home equity loans. *See id.* § 226.3(b). "Any person who originates 2 or more mortgages ... in any 12–month period or any person who originates 1 or more such mortgages through a mortgage broker shall be considered to be a creditor for purposes of [TILA]." 15 U.S.C. § 1602.

In general, TILA requires creditors to disclose, among other things, all finance charges and prepayment provisions. 12 C.F.R. § 226.18. The "finance charge" is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor *as an incident to the extension of credit.*" 15 U.S.C. § 1605(a) (emphasis added). Regulation Z further explains that the finance charge is "the cost of consumer credit as a dollar amount." 12 C.F.R. § 226.4(a). Examples of finance charges in residential mortgage transactions include interest, points, loan fees, appraisal fees, credit report fees, mortgage insurance premiums, and debt cancellation fees. *Id.* § 226(b). Regulation Z expressly exempts from disclosure certain charges, such as credit application fees charged to all applicants, unanticipated charges for late payment or default, fees charged for participation in a credit plan, and the seller's points. *Id.* § 226(c).

In addition, the following fees related to residential mortgage transactions need not be disclosed if they are bona fide and reasonable: (1) fees for title examination,

abstract of title, title insurance, property survey, and similar purposes; (2) fees for preparing loan-related documents, such as deeds, mortgages, and reconveyance or settlement documents; (3) notary and credit report fees; (4) property appraisal or inspection fees performed prior to closing; (5) amounts required to be paid into escrow or trustee accounts if the amounts would not otherwise be included in the finance charge. *Id.* Regulation Z also allows a creditor to exclude taxes and fees "that actually are or will be paid to public officials for determining the existence of or for perfecting, releasing, or satisfying a security interest." *Id.* § 226.4(e)(1).

The Plaintiffs advance two theories for recovery under TILA. First, that the Disputed Fees were finance charges that the Defendants either failed to disclose or improperly excluded because they were not bona fide or reasonable. Second, that the Defendants failed to disclose the Disputed Fees as prepayment penalties. The Court will now address each theory.

### B. Finance Charges

■ As a threshold matter, a claim for undisclosed fees under TILA may only be sustained if the disputed fees are considered finance charges under the Act. "In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit." *Pechinski v. Astoria Federal Savings and Loan Ass'n,* 345 F.3d 78, 80 (2d Cir.2003). Fees imposed relating to the extinguishment of debt are generally not considered incident to the extension of the loan. *See Pechinski v. Astoria Federal Savings and Loan Ass'n,* 238 F.Supp.2d 640, 644 (S.D.N.Y.), *aff'd,* 345 F.3d 78 (2d Cir.2003); *Stutman v. Chemical Bank,* No. 94–5013, 1996 WL 539845, at *2 (S.D.N.Y.1996). However, "[t]he determination of whether such charges are properly includable in the finance charge is extremely fact-intensive." 1 Fed.Reg. Real Estate & Mortgage Lend-

ing 4th § 10:12. The critical inquiry is whether the creditor only would have provided the loan with a guarantee that the mortgagor would pay the fee. *Pechinski,* 238 F.Supp.2d at 644; *see also Stutman,* 1996 WL 539845, at *2; *see also Adamson v. Alliance Mortg. Co.,* 861 F.2d 63 (4th Cir.1988), *overruled on other grounds by Busby v. Crown Supply, Inc.,* 896 F.2d 833, 838 (4th Cir.1990).

In *Pechinski, Stutman* and *Adamson,* fees imposed relating to the extinguishment of debt were held not to be finance charges by the courts. In *Pechinski,* the mortgagors sought to refinance their mortgage loan with another lender. In order to avoid the mortgage recording tax, the borrowers requested that the creditor assign their loan, which the creditor agreed to do as long as the borrower paid a fee. The mortgagors paid the fee and filed suit, claiming the fee was a finance charge that required disclosure under TILA. The court held that the fee was not a finance charge, and thus not required to be disclosed, because it was not imposed "at the time the loan was initiated" and was not incident to the extension of credit. *Pechinski,* 238 F.Supp.2d at 644. The Court also noted that fee was imposed because of a specific request by the plaintiffs that the mortgage be assigned to another lending institution. "Therefore, the [fee] was incident not to the extension of the loan, but rather to the extinguishment of the debt." *Id.* at 643.

In *Stutman,* the borrowers of a loan for a cooperative apartment sought to prepay their loan with the proceeds of another loan from a different creditor. The subsequent creditor refused to close on the loan without the security, that is, the proprietary lease and shares in the cooperative apartment being held by the creditor. In order to effectuate the closing, the borrowers were required to pay a fee for the creditor to deliver the security at the clos-

ing. The court held that the fee was not a condition to the loan and "was not incident to the extension of the loan, but rather to the extinguishment of the debt...." *Stutman*, 1996 WL 539845, at *2–3.

In *Adamson*, the plaintiffs alleged that they were required to pay certain fees as a condition of releasing the deeds of trust after they had completed payments on their mortgages. The fact that release fees would be charged was not disclosed at the time the loans were made. The Court of Appeals for the Fourth Circuit denied the plaintiffs' claims under TILA, reasoning that "[t]he release fees were not charged during the transaction in which credit was extended, but as an incident to the formal extinguishment of the Lenders' liens after the debts had been repaid." *Adamson*, 861 F.2d at 63.

▮ With regard to the facsimile fee in this case, the "official staff commentary" for TILA states that "a fee for courier service charged by a settlement agent to send a document to the title company or some other party is not a finance charge, provided that the creditor has not required the use of a courier or retained the charge." 60 Fed.Reg. 16771, 16777 (April 3, 1995); *see also Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 943 (7th Cir. 1995) (holding that a courier fee charged at settlement did not violate TILA). Fees for a courier service must be disclosed if they are required by the creditor. *Rodash v. AIB Mortg. Co.*, 16 F.3d 1142 (11th Cir.1994) abrogated on other grounds by, *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir.1996) (holding that the defendants violated TILA as a matter of law by failing to disclose as part of the finance charge the charge imposed for payment of Federal Express delivery).

Based on the bare allegations in the amended complaint, it is unclear whether the Defendants required that the payoff statement be faxed or whether the Plaintiffs, or some third party, requested that the payoff be faxed. *See, e.g., Cappellini v. Mellon Mortg. Co.*, 991 F.Supp. 31, 38 (D.Mass.1997) (stating that "fax and statement fees are not prepayment charges, but are rather charges for special services outside of the basic service agreement provided to the borrower ... with respect to— but not exclusively related to the prepayment of—a loan").

As to the attorney document preparation fee and the recording fee, the prevailing law states that fees charged for prepayment are not "incident to, and a condition of, the extension of credit," where they are imposed after the issuance of the loan and for a service requested by the borrower. An analysis of the Plaintiffs' allegations in the amended complaint reveal that additional discovery is necessary to determine whether the fees were incident to the extension of credit. More importantly, discovery is necessary to determine whether the fees were required for the extinguishment of the loan or whether they were for a service requested by the borrower.

The Court finds that the allegations in the complaint are sufficiently distinguishable from the facts that required dismissal in *Pechinski*. First, unlike the assignment fee in *Pechinski*, the attorney document preparation fees and the recording fees in this case are generally considered finance charges when charged at origination. *See Inge v. Rock Financial Corp.*, 281 F.3d 613, 623 (6th Cir.2002) (allowing a claim under TILA for document preparation and recording fees); *Weil v. Long Island Sav. Bank, FSB*, 77 F.Supp.2d 313, 321–22 (E.D.N.Y.1999) (allowing a claim for legal fees); *see also Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 358 (E.D.Pa.1994) (denying summary judgment on a TILA claim for undisclosed attorney fees and improper recording fees).

Second, unlike the assignment fee in *Pechinski* which was not contemplated in the original agreement, the fees in this case were listed in the original Rider, which was subsequently voided by the sale of the mortgage to the secondary mortgage market. The Court notes that this case is unique from any other cases cited by either party in that the original creditor sold the mortgage to a the secondary mortgage market but continued to service the loan. This arrangement caused certain disclosures in the original agreement Rider to be null and void. The impact this arrangement had on the determination of whether the fees were a condition to the Defendants issuing the mortgage is better decided upon further factual discovery.

Finally, the Defendants argument that, as a matter of law, the fees cannot be considered finance charges because they were charged after the loan was issued misconstrues applicable regulations and case law. Regulation Z provides that certain fees charged after loan origination are finance charges, such as cancellation fees and mortgage insurance. Regulation Z also provides that satisfaction and recording fees are finance charges that are allowed to be excluded, but only if those charges are disclosed and are reasonable. Moreover, *Pechinski* held that the fees were not finance charges because they were not required by the creditor. Here, the bare allegations of the amended complaint, viewed in light most favorable to the Plaintiffs, reveals a fee arrangement that may have been required by the creditor and not at the request of the borrower. Accordingly, the Court finds that the Plaintiffs have stated a claim in their amended complaint for a violation of the TILA.

## C. Prepayment Penalties

■ TILA requires the disclosure of prepayment conditions. *See* 15 U.S.C. § 1638; 12 C.F.R. § 226.18. The statute requires that a statement be provided detailing "whether or not a penalty will be imposed" upon the "refinancing or prepayment in full [of the loan] pursuant to acceleration or otherwise." 15 U.S.C. § 1638(a)(11).

■ The Second Circuit has held that charges that do not fit in the definition of "finance charges" under TILA cannot be considered prepayment penalties. *Pechinski*, 345 F.3d at 82. Prepayment penalties encompass "only those charges that are assessed strictly because of the prepayment in full of a simple-interest obligation, as an addition to all other amounts." *Pechinski*, 238 F.Supp.2d at 644 (quoting Official Staff Interpretations, 12 C.F.R. § 226, Supp. I, ¶ 18(k)). As explained in *Pechinski,*

> [t]he Staff Interpretations offer examples of prepayment penalties including: "[i]nterest charges for any period after prepayment in full is made" or "[a] minimum finance charge in a simple-interest transaction." *Id.* TILA and its official interpretations thereby indicate that the type of penalty that must be disclosed relates to finance charges in addition to those otherwise due upon prepayment of the loan. The given examples all involve interest payments or other components of the finance charge.

*Pechinski*, 238 F.Supp.2d at 644.

Regulation Z explains that the lender's obligation to disclose "finance charges" upon prepayment is limited to *finance charges:*

> (k) Prepayment.
>
> (1) When an obligation includes a *finance charge* computed from time to time by application of a rate to the unpaid principal balance, a statement indicating whether or not a penalty may be imposed if the obligation is prepaid in full.

(2) When an obligation includes a *finance charge* other than the finance charge described in paragraph (k)(1) of this section, a statement indicating whether or not the consumer is entitled to a rebate of any finance charge if the obligation is prepaid in full.

12 CFR § 226.18.

In *Pechinski,* the Court held that the disputed fees did not fall within the statute's definition of prepayment penalties because the fees were not imposed strictly because of the prepayment in full of the loans and could have been assessed after the loan had been paid off. *Pechinski,* 238 F.Supp.2d at 644. The court also reasoned that fees cannot be considered a *pre* payment if they happened to be charged after payment was made and the loan had matured. *Id.* at 645.

In this case the fees fall within the statute's definition of prepayment penalties. As alleged in the complaint:

At the time of satisfaction of the [Plaintiffs] mortgage loans, Defendants, acting as the "servicer" and debt collector of mortgage loans that have been resold by Defendants predominantly to FNMA, GNMA or FHLMC, present the mortgagors with a statement containing the amount necessary to pay-off the mortgage debt and for various fees, charges and debts imposed and collected by Defendants.

These allegations, read in a light most favorable to the Plaintiffs, state that the Disputed Fees and charges were included with the total amount "necessary" to pay-off the mortgage debt. As such, the fees appear to be a condition to prepayment in full and charged before the payoff of the loan. The Court finds that these allegations are sufficient to allege a claim under TILA for failing to disclose prepayment penalties.

## D. Statute of Limitations

The Defendants argue that the McAnaney and Russo Plaintiffs claims under TILA are untimely. A claim under TILA must be brought within one year from the date of occurrence of the alleged violation. *See* 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."); *see also Koons Buick Pontiac GMC, Inc. v. Nigh,* —— U.S. ——, ——, 125 S.Ct. 460, 475, 160 L.Ed.2d 389 (2004); *Eubanks v. Liberty Mortg. Banking Ltd.,* 976 F.Supp. 171, 174 (E.D.N.Y.1997). Courts have held that equitable tolling is appropriate under TILA if there are allegations of concealment and fraud. *Weil v. Long Island Savings Bank, FSB,* 77 F.Supp.2d 313, 322 (E.D.N.Y.1999); *see also Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 505 (3d Cir.1998); *Jones v. TransOhio Savings Ass'n,* 747 F.2d 1037, 1041 (6th Cir.1984).

■■■ The Plaintiffs amended complaint sufficiently alleges that the Defendants have engaged in fraudulent, misleading, and deceptive efforts to conceal the true nature of their conduct. In support of this allegation, the Plaintiffs claim that the Defendants collect the charges and fees and then return some, but not all, of the money owed without advising the Plaintiffs that any monies were charged in error. As a result, the Plaintiffs claim that they have only recently learned of the existence of claims against the Defendants. Thus, the Court finds that the allegations in the complaint are sufficient to allege an equitable tolling of the statute. Whether the Defendants actually engaged in any fraudulent activity or concealment is better raised after discovery has been completed.

## III. The Real Estate Settlement Procedures Act

The Real Estate Settlement Procedures Act (RESPA) was enacted to enable consumers to better understand the home purchase and settlement process and, where possible, to bring about a reduction in settlement costs. 12 U.S.C. § 2601. RESPA prohibits, among other things, the charging of unearned fees for settlement services, the collection of excess escrow monies, and inaccurate escrow account reporting, and the imposition of fees for statements required by RESPA and TILA. 12 U.S.C. §§ 2607, 2609, 2610. The Court will address each of the Plaintiffs claims separately.

### A. Settlement Fees

■ Among other things, RESPA eliminates "kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(2). RESPA provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." *Id.* § 2607. The Plaintiffs' complaint alleges that the Defendants charged the Disputed Fees for settlement services that were not provided. The Defendants contend that the fees in question were not charged as "settlement services" as defined under the Act or the interpreting regulations promulgated by the Federal Housing and Urban Development Agency ("HUD") to interpret RESPA.

Thus, the Court must determine whether the charges fall within the term "settlement services" as defined under RESPA. The statute states that "settlement services" includes:

any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement.

12 U.S.C.A. § 2602. In addition, the implementing regulations, which both parties rely on in their argument, states that "[s]ettlement means the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan." 24 C.F.R. § 3500.2. The regulation also sets forth a nonexclusive list of fifteen examples of "settlement services," including:

(1) Origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of such loans);

(2) Rendering of services by a mortgage broker (including counseling, taking of applications, obtaining verifications and appraisals, and other loan processing and origination services, and communicating with the borrower and lender);

(3) Provision of any services related to the origination, processing or funding of a federally related mortgage loan;

(4) Provision of title services, including title searches, title examinations, abstract preparation, insurability determinations, and the issuance of title commitments and title insurance policies;

(5) Rendering of services by an attorney;

(6) Preparation of documents, including notarization, delivery, and recordation;

(7) Rendering of credit reports and appraisals;

(8) Rendering of inspections, including inspections required by applicable law or any inspections required by the sales contract or mortgage documents prior to transfer of title;

(9) Conducting of settlement by a settlement agent and any related services;

(10) Provision of services involving mortgage insurance;

(11) Provision of services involving hazard, flood, or other casualty insurance or homeowner's warranties;

(12) Provision of services involving mortgage life, disability, or similar insurance designed to pay a mortgage loan upon disability or death of a borrower, but only if such insurance is required by the lender as a condition of the loan;

(13) Provision of services involving real property taxes or any other assessments or charges on the real property;

(14) Rendering of services by a real estate agent or real estate broker; and

(15) Provision of any other services for which a settlement service provider requires a borrower or seller to pay.

*Id.*

The Defendants contend that none of the examples of settlement services set forth in Section 3500.2 of Regulation X relate to services provided when a mortgage loan is discharged, satisfied, or recorded. On the other hand, the Plaintiffs contend that the Disputed Fees charged for attorney document preparation, satisfaction, recording and faxing fall squarely in the examples provided by the statute and regulation.

The law regarding whether the provisions of RESPA apply beyond the inception of a mortgage is not settled in the Second Circuit. Under facts similar to this case, the Ninth Circuit Court of Appeals affirmed the dismissal of a complaint that alleged a RESPA violation for fees that were assessed at the time repayment of the loan was complete. *Bloom v. Martin,* 77 F.3d 318, 320 (9th Cir.1996); *see also Greenwald v. First Fed. Sav. & Loan Ass'n,* 446 F.Supp. 620, 625 (D.Mass.1978), *aff'd,* 591 F.2d 417 (1st Cir.1979) (holding that interest payments on escrow accounts are not a settlement practice under RESPA because they "can continue long after the closing of the mortgage transaction and which can continue to occur during the entire life of the mortgage").

This bright-line rule, limiting the scope of RESPA to practices at or before settlement, has recently been adopted by a court in this circuit. *See Flagg v. Yonkers Sav. and Loan Ass'n, FA,* 307 F.Supp.2d 565, 580 (S.D.N.Y.2004). In *Flagg,* the court concluded that obligations such as the payment of interest during the term of the mortgage "falls outside the scope of RESPA and into the deregulated ambit of the mortgage agreement's terms." *Flagg,* 307 F.Supp.2d at 581. However, the *Flagg* court recognized that other courts have cast doubt on the continuing viability of this temporal analysis. *See MorEquity, Inc. v. Naeem,* 118 F.Supp.2d 885, 900 (N.D.Ill.2000); *Cortez v. Keystone Bank,* 2000 WL 536666, at *10 (E.D.Pa.2000). Indeed, other courts have allowed claims under RESPA for release, discharge, and facsimile fees without analyzing or applying the temporal restriction. *See Weizeorick v. ABN AMRO Mortg. Group, Inc.,* 337 F.3d 827 (7th Cir.2003); *Haehl v. Washington Mut. Bank, F.A.,* 277 F.Supp.2d 933, 937 (S.D.Ind.2003); *De-Leon v. Beneficial Const. Co.,* 55 F.Supp.2d 819 (N.D.Ill.1999).

The Court agrees with the temporal analysis followed in *Bloom* and *Flagg*. Given the vagueness of the word settlement in the statute, the Court affords deference to HUD's regulation stating that "settlement services" is the "process of executing legally binding documents regarding a lien on property." Blacks law dictionary defines a "closing," also known as "settlement," as "[t]he final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred." Black's Law Dictionary (8th ed.2004). In addition, RESPA was enacted to protect consumers from unnecessary fees while purchasing a home. Further, nothing in the relevant portion of RESPA, its implementing regulations, or the plain meaning of the statute indicate a reason to extend the coverage of "settlement services" to the satisfaction, prepayment, or release of a mortgage.

The Disputed Fees alleged here in the complaint all relate to actions that occurred well after the property transfer between the buyer and the seller. As stated in *Flagg*, the obligations complained of have fallen "outside the scope of RESPA and into the deregulated ambit of the mortgage agreement's terms." *Flagg*, 307 F.Supp.2d at 581. Therefore, the Court finds that the facts in the complaint cannot, as a matter of law, state a claim for relief under the provisions of RESPA regarding settlement services.

**B. Escrow Services**

■ Congress included a provision in RESPA limiting both the amount that a lender could require to be deposited in escrow at the time of settlement and the amount of subsequent monthly deposits. RESPA § 10(a). In general, RESPA states that a lender may not require the borrower

> to deposit in any escrow account which may be established in connection with such loan for the purpose of assuring payment of taxes, insurance premiums, or other charges with respect to the property, in connection with the settlement, an aggregate sum (for such purpose) in excess of a sum that will be sufficient to pay such taxes, insurance premiums and other charges....

12 U.S.C.A. § 2609(a).

The Plaintiffs allege in the amended complaint that the Disputed Fees were collected and deposited in the escrow accounts and were not for the purpose of assuring the payment of taxes or insurance premiums. The Defendants contend that the majority of courts, including the Fourth, Fifth, and Seventh Circuits, have found that there is no private right of action under § 2609(a). *See State of La. v. Litton Mortgage Co.*, 50 F.3d 1298, 1301 (5th Cir.1995); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1091 (7th Cir.1982); *Clayton v. Raleigh Fed. Sav. Bank*, 107 F.3d 865, 1997 WL 82624 (4th Cir.1997).

■ In their determination of whether a private cause of action exists, courts have applied the factors stated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). These factors are (1) whether the plaintiff is a member of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent to create or deny an implied remedy; (3) whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. Most important among these factors has been the second prong, that is, the intent of Congress.

Courts have concluded that no private right of action exists under § 2609 because that section, unlike other sections of RESPA, is silent regarding private remedies and such silence indicates that Congress did not intend to provide a private remedy. *See Litton Mortgage Co.,* 50 F.3d at 1301. Most notably, the *Litton* court found that Congress amended the escrow section of RESPA after the circuit courts had decided that no private right of action existed and only provided for an administrative remedy under § 2609(c). *Id.*

The Second Circuit has not decided whether a private right of action exists under § 2609(a). However, a court in this circuit found that a private right of action does exist. *See Heller v. First Town Mortg. Corp.,* 1998 WL 614197, at *2 (S.D.N.Y.1998). The *Heller* court rejected the reasoning of the previous decisions that found that no private right of action existed. First, the court rejected the reasoning in *Litton* that the addition of the administrative penalty provision under § 2609(c) implied that a private cause of action did not exist. Second, the court rejected the notion that a no private right of action exists due to the fact that such a right was expressly provided in one section but not in another. The court explained that such references to private remedies were intended to provide only for extraordinary remedies, costs, and attorney's fees to the prevailing party, rather than to create specific private causes of action. In sum, the *Heller* court primarily relied on language in § 2607 in finding that RESPA as a whole provided a private cause of action.

The Court agrees with the reasoning in *Litton* and *Allison.* In addition to the well-reasoned opinions of the Fifth and Seventh Circuits in *Litton* and *Allison,* RESPA is clear on its face when it comes to private remedies. RESPA specifically provides for a three year statute of limitations in any action brought in federal court for a violation of §§ 2605, 2607, and 2608. 12 U.S.C. § 2614. Had Congress intended to create a private right of action under § 2609, that section also would have been included in the statute of limitations section. Moreover, § 2607 and § 2608 of RESPA provides for treble damages and attorneys fees, whereas § 2609 has no such provision with regard to damages. Only administrative enforcement by HUD is contemplated under § 2609. As such, the Court finds that no private right of action exists under the escrow limitation provisions in § 2609(a) of RESPA.

### C. Fees for Statements Required by RESPA and TILA

The Plaintiffs also claim that the Defendants violated § 2610 of RESPA by charging fees for the preparation of certain payoff statements required under TILA and RESPA. Such practice is prohibited under § 2610, which states:

> No fee shall be imposed or charge made upon any other person (as a part of settlement costs or otherwise) by a lender in connection with a federally related mortgage loan made by it (or a loan for the purchase of a mobile home), or by a servicer (as the term is defined under section 2605(i) of this title), for or on account of the preparation and submission by such lender or servicer of the statement or statements required (in connection with such loan) by sections 2603 and 2609(c) of this title or by the Truth in Lending Act.

12 U.S.C. § 2610.

For the same reasons as stated above, the Court finds that there is no private right of action under § 2610. *See Bloom,* 865 F.Supp. 1377, 1385 (N.D.Cal.1994), *aff'd,* 77 F.3d 318, 320 (9th Cir.1996). Therefore, the Plaintiffs claim under § 2610 fails as a matter of law.

## IV. The Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") was enacted in 1977 to "eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged...." 15 U.S.C. § 1692(e). Under FDCPA, a debt collector may not use any "false, deceptive, or misleading representation" or "unfair or unconscionable" means in connection with the collection of any debt. *Id.*

Generally, creditors are not considered "debt collectors" under the FDCPA. 15 U.S.C. § 1692a(6)(F). A "debt collector," as defined by the statute means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). In particular, FDCPA excludes originators of credit from the definition of "debt collector" under certain conditions:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

*Id.* § 1692a(6)(F).

■ In enacting the FDCPA, Congress targeted situations where natural constraints would fail to inhibit debt collection practices:

> Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them.

S. Rpt. No. 95–382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1696. Therefore, generally, the FDCPA does not apply to creditors. *See Maguire v. Citicorp Retail Svcs., Inc.,* 147 F.3d 232, 236 (2d Cir.1998); *Krutchkoff v. Fleet Bank, N.A.,* 960 F.Supp. 541, 548 (D.Conn.1996); *Teng v. Metro. Retail Recovery, Inc.,* 851 F.Supp. 61, 66 (E.D.N.Y.1994).

■ The Defendants contend that they fall squarely within the exclusion because all of the debts were originated by the Defendants before being transferred to the secondary mortgage market. The Plaintiffs argue that the Defendants are liable under the FDCPA for two reasons. First, the exclusion only applies to "debts" owed or due to another and the Disputed Fees were never "bona fide debts" because they were not authorized under the mortgage agreement. Second, the Defendants did not "originate" the debt because Long Island Savings originated the loans of the McAnaney's and Russo's.

Both of the Plaintiffs arguments are without merit. First, the Plaintiffs' allegation that the Defendant did not "originate" the debt because it was not in the mortgage agreement is wholly inapplicable. The FDCPA states that a creditor is not a debt collector if it is collecting a debt that is "owed or due or asserted to be owed or due...." 15 U.S.C. § 1692a(6)(F). As such, whether the debt is bona fide or in the mortgage agreement is not pertinent to the issue of whether the Defendants are debt collectors under the FDCPA.

Second, the loans fit the exception even though Long Island Savings originated the loans because they were transferred to Astoria Federal when Long Island Savings merged into Astoria Federal in 1998. At the time, the loans were not in default, and therefore, the exclusion in § 1692a(6)(F) applies. *Id.* (stating that a creditor is not a debt collector when it obtains a debt that was "not in default").

Accordingly, the Defendants cannot be liable under the FDCPA because they are excluded from the definition of "debt collectors" due to the fact that they originated the Plaintiffs' loans. Therefore, the Plaintiffs claims under FDCPA are dismissed.

## V. State Law Claims

Having found that the complaint asserts a federal claim against the Defendants under the TILA, the Court will exercise supplemental jurisdiction over the Plaintiffs state law claims pursuant to 28 U.S.C. § 1367(a).

## CONCLUSION

For all the foregoing reasons, it is hereby

**ORDERED**, that the Defendants motion to dismiss the complaint pursuant to Rule 12(b)(6) is hereby **DENIED** as to the Plaintiffs claims under the Truth in Lending Act; and it is further;

**ORDERED**, that the Defendant's motion to dismiss is **GRANTED** as to the Plaintiffs claims under the Real Estate Settlement Procedures Act and the Fair Debt Collection Practices Act; and it is further

**ORDERED**, that the parties are directed to contact United States Magistrate Judge William D. Wall forthwith to schedule the completion of discovery.

**SO ORDERED.**