[Cite as *U.S. Bank v. Schubert*, 2014-Ohio-3868.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| US BANK | C.A. No.    13CA010462 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DENNIS M. SCHUBERT, et al. | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellants | CASE No.    10CV170414 |

DECISION AND JOURNAL ENTRY

Dated: September 8, 2014

CARR, Presiding Judge.

{¶1}    Appellants Dennis and Sue Schubert appeal the judgment of the Lorain County Court of Common Pleas that dismissed their Fair Debt Collection Practices Act claim against appellees U.S. Bank, N.A., and Ocwen Loan Servicing, LLC.  This Court reverses and remands.

I.

{¶2}    U.S. Bank filed a complaint for foreclosure against the Schuberts.  In their fourth amended answer and counterclaims, the Schuberts alleged nine counterclaims against U.S. Bank and additional counterclaim defendant Ocwen Loan Servicing, as well as class action claims against Litton Loan Servicing LP, JP Morgan Chase Bank NA, and Ocwen Financial Corporation.  U.S. Bank and Ocwen Loan filed a partial motion to dismiss pursuant to Civ.R. 12(B)(6) solely as to the nine counterclaims against them.  The Schuberts opposed the motion, and U.S. Bank and Ocwen Loan replied.

{¶3} The trial court denied the motion to dismiss as to the Schuberts' counterclaims alleging breach of contract and breach of the covenants of good faith and fair dealing implied in the mortgage. The trial court granted the motion and dismissed the Schuberts' counterclaims alleging wrongful foreclosure, intentional infliction of emotional distress, negligence, gross negligence/willful and wanton conduct, mortgage servicing abuses, violations of the Real Estate Settlement Procedures Act (RESPA), and violations of the Fair Debt Collection Practices Act (FDCPA). The court appended the following language to the judgment entry: "Pursuant to Civ.R. 54(B), this Court enters final judgment as to one or more but fewer than all of the claims or parties upon an express determination that there is no just cause for delay."

{¶4} One week later, the trial court issued a purported nunc pro tunc journal entry, reiterating the substance of its prior order, but omitting the quoted language above, and prefacing the judgment entry with the following language: "This order hereby corrects the Journal Entry dated July 31, 2013 nunc pro tunc to remove Rule 54 language which was entered in error."

{¶5} The Schuberts filed a timely appeal in which they raise one assignment of error for review.

{¶6} As a preliminary matter, this Court analyzes whether the trial court's judgment is a final, appealable order. The Schuberts raised the issue in their brief, arguing that this Court has jurisdiction to hear the merits of their appeal. U.S. Bank and Ocwen Loan responded, arguing against finality and that we lack jurisdiction. A trial court lacks the authority to reopen and modify a final judgment. *See Levin v. George Framm & Sons, Inc.* 65 Ohio App.3d 841, 848 (9th Dist.1990).

**{¶7}** The trial court disposed of fewer than all of the pending claims in the matter below and recited the relevant language pursuant to Civ.R. 54(B) indicating finality. Civ.R. 54(B) states:

> When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**{¶8}** The trial court later issued a "nunc pro tunc journal entry" identical to its initial disposition, except that it removed the Civ.R. 54(B) language and asserted that such language had earlier been entered in error.

**{¶9}** The first issue is whether the trial court may effectively remove via nunc pro tunc entry the Civ.R. 54(B) certification included in its initial judgment entry. This Court concludes that the trial court's use of the mechanism of a nunc pro tunc entry was not effective to convert a prior final and appealable order into an interim order that is not subject to appellate review.

**{¶10}** Explaining the proper uses of a nunc pro tunc entry, this Court has written:

> A nunc pro tunc order may be issued by a trial court, as an exercise of its inherent power, to make its record speak the truth. It is used to record that which the trial court did, but which has not been recorded. It is an order issued now, which has the same legal force and effect as if it had been issued at an earlier time, when it ought to have been issued. Thus, the office of a nunc pro tunc order is limited to memorializing what the trial court actually did at an earlier point in time. It can be used to supply information which existed but was not recorded, to correct mathematical calculations, and to correct typographical or clerical errors.
>
> A nunc pro tunc order cannot be used to supply omitted action, or to indicate what the court might or should have decided, or what the trial court intended to decide. Its proper use is limited to what the trial court actually did decide. That, of

course, may include the addition of matters omitted from the record by inadvertence or mistake of action taken. Therefore, a nunc pro tunc order is a vehicle used to correct an order previously issued which fails to reflect the trial court's true action.

(Internal citations omitted.) *State v. Greulich*, 61 Ohio App.3d 22, 24-25 (9th Dist.1988).

**{¶11}** In addressing the significance of a Civ.R. 54(B) certification, the Ohio Supreme Court held:

For purposes of Civ.R. 54(B) certification, in deciding that there is no just reason for delay, the trial judge makes what is essentially a factual determination – whether an interlocutory appeal is consistent with the interests of sound judicial administration.

Where the record indicates that the interests of sound judicial administration could be served by a finding of "no just reason for delay," the trial court's certification determination must stand.

*Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352 (1993), paragraphs one and two of the syllabus. Although trial courts "should avoid a mechanical application of the Civ.R. 54(B) language[,]" the trial court's factual finding that allowing immediate appeal best serves the administration of justice "is entitled to the same presumption of correctness that [] is accorded regarding other factual findings." *Id.* at 355. Nevertheless, this presumption "does not apply where the judgment entry indicates the trial court acted reflexively and employed the language as boilerplate." *Jeffrey v. Marietta Memorial Hosp.*, 10th Dist. Nos. 11AP-492, 11AP-502, 2013-Ohio-1055, ¶ 66.

**{¶12}** In this case, the trial court's initial judgment entry does not indicate on its face that the trial court acted reflexively and appended the Civ.R. 54(B) certification merely as boilerplate language. This is evidenced by the trial court's "express determination" that not only was there no just cause for delay, but that it was "enter[ing] final judgment as to one or more but fewer than all of the claims or parties[.]" In its purported nunc pro tunc order, the trial court did not assert that it had in fact originally found that the interests of sound judicial administration did

not warrant the certification and that the certification was merely employed as boilerplate. It merely asserted that the certification had been "entered in error." The trial court lacks authority to reconsider its final judgment to correct an error in this manner. On its face, the second judgment entry indicates that the trial court omitted the Civ.R. 54(B) certification based on what it subsequently determined it *should* have decided or *intended* to decide. Such a modification does not constitute a proper nunc pro tunc order. *Greulich, supra.* Accordingly, the trial court's nunc pro tunc order was not effective to delete the earlier Civ.R. 54(B) certification in the July 31, 2013 judgment entry ruling on US Bank's and Ocwen Loan's partial motion to dismiss pursuant to Civ.R. 12(B)(6).

{¶13} Having determined that the judgment appealed in this case contains Civ.R. 54(B) certification, this Court must still determine whether the judgment is a final, appealable order. It is well settled that a trial court cannot impute finality on a nonfinal order merely by certifying that there is no just reason for delay. *See LEH Properties, Inc. v. Pheasant Run Assn.*, 9th Dist. Lorain No. 07CA009275, 2008-Ohio-4500, ¶ 11, citing *Wisintainer*, 67 Ohio St.3d at 354 ("[T]he phrase 'no just reason for delay' is not a mystical incantation which transforms a nonfinal order into a final appealable order.").

{¶14} This Court recognizes the two-part test developed by the *Wisintainer* court. We must first determine whether the order is final pursuant to R.C. 2505.02(B) and second whether competent, credible evidence supports the trial court's factual determination underlying the Civ.R. 54(B) certification. *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, ¶ 16, 19-20 (9th Dist.).

{¶15} Pursuant to R.C. 2505.02(B)(1), "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it * * * affects a substantial right in

an action that in effect determines the action and prevents a judgment[.]" The trial court's dismissal of the Schuberts' FDCPA claims for failure to state a claim upon which relief may be granted determined the viability of that claim and prevented a judgment in favor of the Schuberts against the bank and loan servicer. A dismissal for failure to state a claim has determined beyond doubt that "the plaintiff can prove no set of facts entitling him to relief[,]" or in other words that the complaint is insufficient to allege a claim. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, ¶ 5. The plaintiff is, therefore, foreclosed from obtaining relief on that claim.

**{¶16}** The Schuberts, moreover, would not be able to obtain comparable relief merely by successfully defending against the bank's foreclosure action. "If claims are factually separate and independent, multiple claims are clearly present. Two legal theories that require proof of substantially different facts are considered separate claims * * *." *Ferraro* at ¶ 17. While the bank must prove that the Schuberts failed to make their required mortgage payments to prevail on the foreclosure action, the Schuberts need not merely prove that they made the requisite payments to prevail on their FDCPA claims. Instead, to prevail, they must prove deception or false or misleading representations by the debt collectors, i.e., substantially different facts from those the bank must produce. Moreover, in addition to the bank, the Schuberts filed their claim against Ocwen Loan, a separate and distinct party. Accordingly, dismissal of their FDCPA claims affects a substantial right of the Schuberts.

**{¶17}** Next, we consider "whether the trial court's determination that 'there is no just [reason] for delay' was appropriate." *Id.* at ¶ 16. This Court has recognized:

> The paramount consideration to be made is whether the court's determination serves judicial economy at the trial level. In assessing the effect on judicial economy: The trial court can best determine how the court's and the parties' resources may most effectively be utilized. * * * The trial court has seen the

development of the case, is familiar with much of the evidence, is most familiar with the trial court calendar, and can best determine any likely detrimental effect of piecemeal litigation.

(Internal citations and quotations omitted.) *Id.* at ¶ 20-21.

**{¶18}** In this case, judicial economy would be better served by a trial of the claims and counterclaims in a single action. The Schuberts' remaining viable claims for breach of contract and breach of the covenant of good faith and fair dealing implicate facts and issues which overlap to some extent the facts and issues relevant to their FDCPA claims, as well as to the bank's foreclosure complaint. Without the opportunity for the Schuberts to immediately appeal the dismissal of their FDCPA claims, trial would proceed to final judgment on the foreclosure action and the Schuberts' two breach claims (assuming the trial court either included Civ.R. 54(B) certification or otherwise fully disposed of the Schuberts' pending class action claims). Only then could the Schuberts appeal the dismissal of their FDCPA claims. Were we to reverse the trial court's dismissal of those claims, the trial court would have to conduct a second trial. As we recognized in *Ferraro* at ¶ 22, the Ohio Supreme Court wrote: "More important than the avoidance of piecemeal appeals is the avoidance of piecemeal trials. It conserves expense for the parties and clarifies liability issues for jurors when cases are tried without 'empty chairs.'" *Wisintainer*, 67 Ohio St.3d at 355.

**{¶19}** We earlier concluded that it does not appear that the trial court acted reflexively or included the Civ.R. 54(B) certification as boilerplate. The trial court's determination that the Schuberts should have an immediate right to appeal the dismissal of certain of their claims comports with sound judicial administration.

**{¶20}** For the reasons enunciated above, this Court concludes that the trial court's initial judgment in which it dismissed certain of the Schuberts' counterclaims constitutes a final,

appealable order that this Court has jurisdiction to review. Accordingly, we turn now to a consideration of the merits of the Schuberts' appeal.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT REVERSIBLY ERRED TO THE PREJUDICE OF APPELLANTS, DENNIS AND SUE SCHUBERT, WHEN THE TRIAL COURT DISMISSED UNDER CIV.R. 12(B)(6) THE SCHUBERTS' COUNTERCLAIM AGAINST APPELLEES, US BANK AND OCWEN, FOR US BANK'S AND OCWEN'S VIOLATIONS OF THE FEDERAL [FAIR] DEBT COLLECTION PRACTICES ACT.

{¶21} The Schuberts argue that the trial court erred by dismissing their counterclaim alleging violations of the Fair Debt Collection Practices Act for failure to state a claim upon which relief can be granted. This Court agrees.

{¶22} This Court reviews a trial court order granting a motion to dismiss pursuant to Civ.R. 12(B)(6) under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5, citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio- 2480, ¶ 4-5. In reviewing a motion to dismiss, this Court must accept as true all factual allegations in the complaint and all reasonable inferences must be drawn in favor of the nonmoving party. *Rossford* at ¶ 5; *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). "To prevail on a Civ.R. 12(B)(6) motion to dismiss, it must appear on the face of the complaint that the plaintiff cannot prove any set of facts that would entitle him to recover." *Raub v. Garwood*, 9th Dist. No. 22210, 2005-Ohio-1279, ¶ 4, citing *O'Brien v. Univ. Community Tenants Union*, 42 Ohio St.2d 242, 245 (1975).

{¶23} The Schuberts alleged that U.S. Bank and Ocwen Loan violated certain provisions of the FDCPA, including 15 U.S.C. 1692e(2)(A), (5), and (10), all of which implicated false or misleading representations regarding their mortgage debt and the collection thereof. The general

proscription reads: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. The trial court dismissed the Schuberts' FDCPA claims upon finding that "[U.S. Bank] and Ocwen are collecting and servicing [U.S. Bank's] debt and not the debt of a third party." Accordingly, the trial court dismissed the FDCPA claims solely upon the implicit finding that U.S. Bank and Ocwen were not "debt collectors" as defined by the Act. Within the context of a FDCPA claim, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts * * * owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). There are several exceptions which remove a person from the definition of debt collector. For example, creditors are expressly excluded from the definition of debt collector. 15 U.S.C. 1692a(6)(a). A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. 1692a(4). This notion is captured in another exception as follows: "The term [debt collector] does not include * * * any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity * * * concerns a debt which was not in default at the time it was obtained by such person * * *." 15 U.S.C. 1692a(6)(F)(iii).

{¶24} Citing *RBS Citizens, N.A. v. Zigdon*, 8th Dist. Cuyahoga No. 93945, 2010-Ohio-3511, U.S. Bank and Ocwen argue that, as a matter of law, mortgage servicers are not debt collectors. This proposition holds true when the servicing company is merely attempting to collect a current debt, as it stands in the shoes of the mortgagee. Mortgagee banks, and others to whom the mortgage is assigned, are creditors and fall outside the realm of liability under the

FDCPA. *McAnaney v. Astoria Fin. Corp.*, 357 F.Supp.2d 578, 592-593 (E.D.N.Y. 2005). However, mortgagees and mortgage servicing companies become debt collectors when they obtain a debt at a time it is already in default. *Castrillo v. Am. Home Mtge. Servicing, Inc.*, 670 F.Supp.2d 516, 524 (E.D.La. 2009) (recognizing the significance of the timing of the assumption of the debt).

{¶25} The *Castrillo* court distinguished the assumption of a mortgage debt before default, which allowed the servicing company to remain a creditor not subject to the FDCPA, and the assumption of the mortgage debt after default, which accords the servicing company the status of debt collector subject to the FDCPA. *Id.* This reflects the purpose of the FDCPA.

{¶26} 15 U.S.C. 1692(e) addresses that purpose and states:

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

{¶27} In effecting those purposes, Congress recognized the interest of creditors to use appropriate methods to obtain payment in order to maintain good public relations and the prospect of future business. *McAnaney* at 592. On the other hand, debt collectors are not so constrained. *Id.* "In enacting the FDCPA, Congress targeted situations where natural constraints would fail to inhibit debt collection practices: Unlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer's opinion of them." *Id.*, quoting S. Rpt. No. 95-382, 95th Cong., 1st Sess., reprinted in 1977 U.S.Code Cong. & Admin. News 1695, 1696.

**{¶28}** Although courts have been clear that mortgagees who originated the debt or assumed the debt pursuant to merger or assignment are creditors rather than debt collectors, where the debt is first obtained after default, the entity obtaining such debt is a debt collector subject to the FDCPA. *See, e.g., Cyphers v. Litton Loan Servicing, L.L.P.*, 503 F.Supp.2d 547 (N.D.N.Y. 2007); *Teeuwissen v. JP Morgan Chase Bank, N.A.*, 902 F.Supp.2d 826 (S.D.Miss. 2011); *Ademiluyi v. PennyMac Mtge. Invest. Trust Holdings I, LLC*, 929 F.Supp.2d 502 (D.Md. 2013); *Deutsche Bank Trust Co. Americas v. Garst*, 989 F.Supp.2d 1194, 2013 WL 4851493. Further, one of our sister districts recognized that an assignee who obtains a debt in default is a debt collector for purposes of the FDCPA. *D.A.N. Joint Venture III, L.P. v. Armstrong*, 11th Dist. Lake No. 2006-L-089, 2007-Ohio-898, ¶ 45, citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir.2003). Moreover, because the status of the mortgage company and servicing company turns on whether the debt was in default at the time it was obtained, courts have held that such claims cannot be resolved pursuant to a motion to dismiss. *Castrillo*, 670 F.Supp.2d at 524. For these reasons, we reject U.S. Bank's and Ocwen's argument that they cannot be considered debt collector's solely because this matter involves a mortgage debt.

**{¶29}** Because a debt collector includes anyone who attempts to collect a debt asserted to be owed to another, i.e., an alleged debt, "a debt holder or servicer is a debt collector when it engages in collection activities on a debt that is not, as it turns out, actually owed." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361-362 (6th Cir.2012). Moreover, the Sixth Circuit has recognized that

> [t]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute. Our actions are guided by the hand of Congress, and thus we apply the Act broadly according to its terms. * * * Therefore, we hold that the definition of debt collector pursuant to [section] 1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a

debt in default or has treated the debt as if it were in default at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention. Thus, a FDCPA defendant cannot escape coverage under the Act by asserting to the court that the debt was not actually in default, despite having dunned plaintiffs for months or years in the face of plaintiffs' pleas or proof that the collector has made some error. A defendant may not retroactively change the status of the plaintiff it has pursued as an alleged debtor. To hold otherwise would defy the clear congressional mandate we are charged with upholding.

(Internal citations and quotations omitted) *Id.* at 362-363.

{¶30} In this case, the Schuberts alleged in their fourth amended counterclaims that they originally executed a promissory note and mortgage in favor of Bank One, and that Bank One later assigned the note and mortgage to U.S. Bank at a time when the Schuberts were in default. They alleged that they filed for bankruptcy in July 2003, fell further behind in their mortgage payments in 2003 or 2004, and cured that arrearage with two lump sum payments sometime shortly before August 25, 2004. The Schuberts alleged that Ocwen became their loan servicer on July 1, 2004, at a time they allegedly would have still been in default. Moreover, the Schuberts alleged that both U.S. Bank and Ocwen falsely represented the character, amount, or legal status of the debt owed (15 U.S.C. 1692e(2)(A)). Specifically, they alleged that they paid off an identified arrearage amount in full one month, only to be told the following month that they maintained an arrearage amount of ten times the previous month's amount. The Schuberts dispute the accuracy of the amount they might owe, if any, on their mortgage. Assuming the truth of all factual allegations in the complaint, the reasonable inference to be drawn in the Schuberts' favor is that U.S. Bank acquired by assignment the promissory note and mortgage after the Schuberts were already in default. In addition, it is reasonable to infer that Ocwen Loan became the loan servicer for the loan at a time when the homeowners were in default. Furthermore, assuming the truth of the Schuberts' assertion that they fully paid a $1709.76

arrearage in July 2006, and that Ocwen informed them in August 2006 that their arrearage was $11,135.72, they presented sufficient facts to state a claim that the bank and loan servicer as the bank's agent had falsely represented the character, amount, or legal status of the debt, if any. Accordingly, the trial court erred by dismissing the Schuberts' FDCPA claims against U.S. Bank and Ocwen Loan for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6) based upon its sole finding that the bank and loan servicer were creditors as opposed to debt collectors.

**{¶31}** To the extent that the parties argue regarding alternative theories for and against dismissal, for example, recoupment and statute of limitations, this Court declines to address them in the first instance, as the trial court made no findings of fact or rendered any conclusions of law in regard to those issues.

**{¶32}** The Schuberts' sole assignment of error is sustained.

III.

**{¶33}** The assignment of error is sustained. The judgment of the Lorain County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

JACK MALICKI, Attorney at Law, for Appellants.

THOMAS R. THEADO, Attorney at Law, for Appellants.

BENJAMIN D. CARNAHAM and HUNTER G. CAVELL, Attorneys at Law, for Appellee.